Viviano, J.
**263 The issue in this case is whether defendant can be convicted of election-law forgery under MCL 168.937. The Court of Appeals upheld defendant's convictions under that provision, holding that MCL 168.937 creates the substantive offense of election-law forgery. We disagree and hold that MCL 168.937 is nothing more than a penalty provision-it does not create a substantive offense. Because defendant cannot be convicted under a statute that does not set forth a crime, we reverse and remand for further proceedings not inconsistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
Between November 2013 and January 2014, Edward Pinkney participated in a recall effort against the mayor of Benton Harbor, James Hightower. In order to force a recall election, defendant Pinkney needed to obtain 393 signatures on petitions supporting the recall. Defendant had a 60-day window within which to collect the required number of signatures.[1] On January 8, 2014, defendant presented the Berrien County Clerk's office with 62 petitions containing 728 signatures supporting the recall election. The clerk's office certified 402 of these signatures and scheduled the recall election.
**264 Prior to the election, the clerk's office transferred the petitions to the Berrien County Sheriff's Department for examination of perceived irregularities in the signatures on the petitions. After reviewing *537 the petitions, the sheriff's department identified several signatures for which the dates appeared to have been altered. The Michigan State Police Crime Laboratory also examined the petitions and confirmed that five of the petitions contained signatures with altered dates. In each case, the dates had been altered so as to fall within the 60-day window for valid signatures.
Defendant was charged with five counts of election-law forgery under MCL 168.937 and six counts of making a false statement in a certificate-of-recall petition under MCL 168.957. After being bound over to the Berrien Circuit Court on these charges, defendant filed a motion to quash arguing, inter alia , that § 937 is a penalty provision, not a substantive, chargeable offense. The circuit court denied the motion to quash, and the case proceeded to trial. After an eight-day trial, the jury returned verdicts of guilty on the five felony counts and not guilty on the six misdemeanor counts. In a motion for a directed verdict, defendant again argued that § 937 is a penalty provision and not a substantive offense. The circuit court denied the motion and sentenced defendant to concurrent prison terms of 30 to 120 months.
On appeal, defendant argued, among other things, that § 937 does not create a substantive offense and that the admission of certain evidence under MRE 404(b) was improper and requires reversal.[2] The Court of Appeals unanimously upheld defendant's convictions.[3] Regarding § 937, the Court of Appeals held that **265 the statute does create the substantive offense of election-law forgery.[4] In reaching this conclusion, the panel relied heavily on the reasoning of People v Hall ,[5] which considered the same issue.
The Court of Appeals in Hall concluded that § 937 created a substantive offense for two reasons. First, the Court explained that interpreting § 937 as a penalty provision would render it surplusage because another provision, MCL 168.935,[6] already sets forth an identical penalty for felonies under the Michigan Election Law, MCL 168.1 et seq .[7] Second, the Court reasoned that interpreting § 937 as a penalty provision would contravene the Legislature's intent in enacting the Election Law, which the Court described as "ensur[ing] the fairness and purity of the election process in part by proscribing misconduct that would foster such unfairness and impurity."[8] Based on this reasoning, the Hall Court determined that § 937 creates a substantive offense and is not merely a penalty provision.[9]
**266 *538 The Court of Appeals in the present case adopted the Hall panel's reasoning and again held that § 937 constitutes a substantive offense.[10] The Court further noted that interpreting § 937 solely as a penalty provision would create an absurd result.[11] The Court explained:
[U]nder defendant's interpretation of MCL 168.937, only "[a]n inspector of election, clerk, or other officer or person having custody of any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or of any paper, document, or vote of any description," MCL 168.932(c), or "[a] person who is not involved in the counting of ballots as provided by law and who has possession of an absent voter ballot mailed or delivered to another person," MCL 168.932(e), could be guilty of election forgery. There is simply nothing-express, implied, or otherwise-in the Michigan Election Law to support the idea that the Legislature intended such a peculiar result. People v. Stephan , 241 Mich.App. 482, 503, 616 N.W.2d 188 (2000) (explaining that this Court will not read anything into a statute that is "not plainly expressed" by the Legislature). Furthermore, interpreting MCL 168.937 in that manner, that is, as only a penalty provision, would create an absurd result by permitting individuals who do not meet the definitions set forth in MCL 168.932 to commit common-law forgery in the election process without recourse under the Michigan Election Law. People v. Lewis , 302 Mich.App. 338, 341-342, 839 N.W.2d 37 (2013), quoting People v. Tennyson , 487 Mich. 730, 741, 790 N.W.2d 354 (2010) (" 'Statutes must be construed to prevent absurd results.' ").[12 ]
**267 The Court concluded that it could not interpret § 937 in a way that would render the provision surplusage and create such an absurd result.[13]
The panel went on to reject defendant's arguments that § 937 violates the vagueness doctrine and the rule of lenity.[14] The statute is not unconstitutionally vague, the panel explained, because it can be clearly understood by reference to the common-law definition of forgery. Similarly, the panel concluded that the statute does not implicate the rule of lenity because it is not ambiguous.[15]
Defendant has now sought leave to appeal in this Court. We scheduled oral argument on the application, directing the parties to address:
(1) whether the trial court abused its discretion when it admitted evidence under MRE 404(b) that related to the defendant's political and community activities other than the mayoral recall effort for the purpose of showing the defendant's motive to commit the instant *539 crimes, and (2) whether the Court of Appeals erred in determining that MCL 168.937 creates the substantive offense of election forgery and is not merely a penalty provision for the specific forgery offenses set forth in other provisions of the Michigan election law.[16 ]
II. STANDARD OF REVIEW
This Court reviews questions of statutory interpretation de novo.[17]
**268 III. ANALYSIS
It has long been our rule that "[a] criminal statute ought to be so plain and unambiguous that 'he who runs' may read, and understand whether his conduct is in violation of its provisions."[18] In this case, after reviewing the plain language of § 937, together with its context and history, we are convinced that § 937 does not create a substantive crime. Instead, it is an inoperative penalty provision. We reach this unusual conclusion for the reasons that follow.
A. ANALYSIS OF MCL 168.937
When interpreting a statute, "our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language."[19] "In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme."[20] "When a statute's language is unambiguous, ... the statute must be enforced as written. No further judicial construction is required or permitted."[21]
The prosecution charged defendant with six counts of violating § 937, which reads:
Any person found guilty of forgery under the provisions of this act shall, unless herein otherwise provided, be **269 punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court.
Contrary to the Court of Appeals' conclusion that § 937 clearly sets forth the offense of forgery under the Election Law, nothing in the plain language of § 937 suggests that the Legislature intended it to be a chargeable offense. Instead, as defendant argued below, it reads like a penalty provision-i.e., a provision providing the penalty for the crime of forgery enumerated elsewhere in the Election Law. Section 937 does not set forth or describe any conduct that is prohibited. Instead, the Legislature's use of the past tense verb "found" (in the phrase "found guilty of forgery under the provisions of this act") presupposes that an individual has already been convicted of the crime of forgery under the Election Law. Consequently, by its clear terms, the provision does nothing more than provide the punishment *540 for that already-committed offense.[22] **270 A review of its surrounding provisions further indicates that § 937 does not create a chargeable offense, but is instead one of a series of penalty provisions for offenses delineated elsewhere in the Election Law. The three sections of the Election Law immediately preceding § 937 provide as follows:
Any person who shall be found guilty of a misdemeanor under the provisions of this act shall, unless herein otherwise provided, be punished by a fine of not exceeding $500.00, or by imprisonment in the county jail for a term not exceeding 90 days, or both such fine and imprisonment in the discretion of the court.[23 ]
Any person found guilty of a felony under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court.[24 ]
Any person found guilty of perjury under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment **271 in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court.[25 ]
One treatise describes these provisions, along with § 937, as "penalties for offenses where no other penalty is provided by the Act[.]"[26]
Certainly, no one would suggest that § 934 and § 935 create chargeable offenses for misdemeanors and felonies under the Election Law. Instead, they merely *541 define the punishment for misdemeanor and felony offenses under the Election Law, where no penalty is "otherwise provided." Section 937 is nearly identical to §§ 934 and 935, except for the use of the word "forgery" in place of "misdemeanor" and "felony," respectively, thereby leaving no room to distinguish the provisions.
Section 936 is most akin to § 937, in that it specifies a penalty for a recognized type of crime-"perjury" rather than "forgery." Yet the Legislature described how an individual commits "perjury" in MCL 168.933, which reads:
A person who makes a false affidavit or swears falsely while under oath under section 848 or for the purpose of securing registration, for the purpose of voting at an election, or for the purpose of qualifying as a candidate for elective office under section 558 is guilty of perjury.
The only reasonable reading of these two provisions is that the Legislature intended § 933 to be the substantive offense of perjury and § 936 to set forth the punishment for a conviction of perjury under the Election Law. And, since it contains language nearly identical to § 936, it would be exceedingly odd to assume that the **272 Legislature intended § 937 to operate not as a penalty provision like § 936, but as a provision creating the substantive offense of forgery under the Election Law. In short, the plain language of § 937, in context with its surrounding provisions in the Election Law, strongly indicates that it is only a penalty provision.
In reaching the contrary conclusion, the Court of Appeals erred by first looking to the purpose of the Election Law instead of focusing on its plain language.[27] After noting that the purpose of the Election Law is "to regulate primaries and elections, provide for the 'purity' of the election process, and guard against abuse," the Court summarily concluded that interpreting § 937 as a substantive offense would further that purpose.[28] The Court then made the rather remarkable assertion that it would be "peculiar" or "absurd" if someone could only be found guilty of election-related forgery if they engaged in conduct specifically prohibited by two other statutory subsections, MCL 168.932(c) and (e).[29] However, "[t ]he Court of Appeals' reliance on the perceived purpose of the statute runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language."[30] We determine the scope of a statute based on its plain language-here, the words of § 937 give no indication that it was intended to cover all possible election-related forgery crimes.[31]
**273 B. INCORPORATING THE COMMON-LAW DEFINITION OF FORGERY
Our statutory interpretation would not be complete without consideration of *542 whether it is possible to interpret the plain language of § 937 as creating a substantive crime by reference to the common law.[32] The rule is well established that "[w]ords and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject matter as that with which they were associated at the common law."[33] Therefore, "[w]here the statutory provision describes by name, but does not clearly and explicitly state the definition of a criminal offense, courts will construe the statutory crime by resorting to the common-law definition."[34] **274 In this case, however, the statutory text contains no evidence that the Legislature intended to incorporate the common-law definition of forgery when the previous version of § 937 was first enacted or when it was recodified.[35] As noted above, the statutory text does not use the term "forgery" to describe a type of conduct that is prohibited. Instead, it describes the punishment for someone who has already committed the crime of forgery.[36] In other *543 statutes that we have found to codify **275 a common-law crime, the commission of the common-law crime itself is the subject of the statute, which generally expressly criminalizes the crime; the common-law term is simply a shorthand for how the crime is committed.[37] Here, by contrast, the statute's subject is an individual "found guilty" of a crime, and **276 the statute itself merely prescribes the punishment for such an individual; it does not mention the commission of forgery or state that a person who forges "is guilty" of a crime.
Simply plugging the common-law definition of "forgery" into § 937 does not transform the provision into a substantive offense.[38] While the common law can provide the definition of "forgery," the common law cannot supply the elements of "forgery under the provisions of this act ."[39] In other words, a reader of the statute who sees "forgery under the provisions of this act" would not assume that "forgery" means common-law forgery. Instead, a reasonable person would believe that "forgery under the provisions of this act " suggests that he or she could only be found guilty of a *544 forgery crime defined elsewhere in the Election Law.[40]
A review of the statutory history of the Election Law provides further support for our conclusion that § 937 is a penalty provision.[41] For more than 80 years, the only statute in Michigan criminalizing election-related **277 forgery was narrowly drawn to prohibit falsification of a "register of electors" (later called a "registration book").[42] In this statute, the Legislature confusingly combined two offenses in one statute: the first was labeled "larceny," and the second was labeled "forgery." The penalty for these crimes was included at the end of the section, making both crimes felonies. Notably, the statute was designed to protect a document that was in the custody of election officials.[43]
In 1917, the Legislature made two changes to this statute that are of note.[44] It dropped the "larceny" label **278 from the first grouping of prohibited conduct, and instead provided that a person who violated that clause "shall be deemed guilty of a felony." And it deleted the penalty provision from the statute defining these substantive offenses and created a separate *545 penalty provision for the crime of election-related forgery.[45] The latter provision was nearly identical to § 937, the present-day penalty provision at issue in this case.[46] In 1948, these provisions were recodified as 1948 CL 195.8 and 1948 CL 198.3, respectively.[47] **279 During a rewrite of the Election Law in 1954, the Legislature expanded the scope of this election-related forgery prohibition when it enacted MCL 168.932(c), which essentially combined the two offenses from 1948 CL 195.8 into one.[48] But § 932(c) continued to focus (now explicitly) on the actions of election officials and those who have custody of election records-it applies to "[a]n inspector of election, clerk, or other officer or person having custody" of *546 the enumerated documents.[49] In addition, instead of applying only to "a registration **280 book or copy thereof filed for preservation" like its predecessor, the new offense was expanded to cover "any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or ... any paper, document, or vote of any description, which pursuant to this act is directed to be made, filed, or preserved ...."[50]
Finally, the new statute dropped the reference to "forgery," presumably because the newly combined statute also includes some of the former so-called "larceny" activities, so it no longer made sense to use the term "forgery." Perhaps because of this change, the statute also now makes it clear (in its introductory clause) that a person who violates § 932(c) "is guilty of a felony." This, of course, obviated the need for § 937, since the general felony penalty provision (§ 935) applies as the penalty provision. Despite these changes, the 1954 amendments recodified 1948 CL 198.3 as § 937.[51] Thus, the Legislature retained § 937, but omitted the only provision in the Election Law to which it pertained.
To summarize, the previous statute defining "forgery"-1948 CL 195.8-was extremely limited, applying only when an individual falsified a registration book. In 1954, the Legislature combined two offenses into one, dramatically expanded the scope of documents covered, dropped the label "forgery," and made the combined offense a felony (thus obviating the need for a separate forgery penalty provision).
At the same time, the Legislature enacted another statute, MCL 168.957, with potential applicability to the conduct at issue in this case.[52] And, as noted above, **281 the Legislature also recodified a provision making it unlawful to affix a forged name to an initiative or referendum petition. See MCL 168.484.[53] Finally, in 1995, the Legislature added another narrow forgery offense to the Election Law. In that provision, *547 MCL 168.759(8), the Legislature provided that "[a] person who forges a signature on an absent voter ballot application is guilty of a felony."[54]
Why, one might ask, would the Legislature go to all this trouble if it intended to transform § 937, the prior **282 penalty provision, into an omnibus forgery offense covering all election-related documents? And would the Legislature really choose to create such a vast and far-reaching offense in an existing penalty provision by (drumroll please) ... making no substantive changes to its language?
We think it unreasonable to conclude that the Legislature signaled its intention to convert § 937 from a penalty provision to a stand-alone crime by making no meaningful changes to its language.[55] Instead, our review of the statutory history of § 937 confirms that it was previously, and remains now, a penalty provision.
C. THE CANON AGAINST SURPLUSAGE
The Court of Appeals also declined to read § 937 as a penalty provision because of its fear that doing so would render it "mere surplusage."[56] That is, § 937 would be a penalty provision without a crime. This is a serious concern because, as a general rule, "we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory."[57] Thus, the Court of Appeals was justifiably reluctant to declare an entire statutory section meaningless. But we are even more reluctant to use the surplusage canon to create a crime when a plain-language reading of the statute and **283 consideration of its history provide no evidence that the Legislature intended to do so.
The canon against surplusage is not an absolute rule. As Justice THOMAS COOLEY explained 150 years ago:
The rule applicable here is, that effect is to be given, if possible, to the whole instrument , and to every section and clause . If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory.[58 ]
More recently, our Court has stated that "[w ]hen possible , we strive to avoid constructions that would render any part of the Legislature's work nugatory."[59]
**284 *548 Logically, "the canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute."[60] However, in this case, construing § 937 as creating the separate offense of forgery appears to render all or part of two other statutory provisions surplusage. Both § 932(c) (prohibiting most of the forgery-type conduct contained in 1948 CL 195.8, the previous election-law forgery offense)[61] and § 759(8) (prohibiting forgery of a signature on an absentee voter ballot application) prohibit forgery of certain Election Law documents. Section 932(c), in particular, prohibits forgery of an expansive list of documents by certain election officials or other persons having custody of such documents. But if the Legislature intended § 937 to be a general forgery provision prohibiting forgery of any document in the Election Law, why would it have included two other forgery provisions describing how forgery is committed? There would, of course, be no need to do so because § 937 would cover all such conduct. Therefore, reading § 937 as creating a substantive offense of forgery renders all or part of §§ 932(c) and 759(8) surplusage. As a result, the canon against surplusage cannot help us, because both proffered interpretations of the text leave some sections of the Election Law without meaning.[62]
As noted above, the Court of Appeals' interpretation is not based on the plain language of § 937-instead, it is an attempt to salvage that provision and give it some current legal effect. But this goes beyond the work of the **285 surplusage canon.[63] Using the surplusage canon-or any rule *549 of construction-to create a criminal offense is impermissible.[64]
Even though interpreting § 937 as a penalty provision means that it lacks effect because it has no corresponding substantive offense, we cannot disregard the historical textual clues and supplement the otherwise plain text of § 937 to reach a different result.[65] This is true even when enforcing the plain language of the statute may frustrate its purpose.[66]
**286 Even if we believed-contrary to the analysis above-that the Legislature mistakenly omitted a forgery offense from the Election Law, it is not the job of a court to supply the omitted provision.[67] And this is true even if interpreting the statute according to its plain language, context, and history leads us to the conclusion that it is inoperative.[68]
**287 *550 But alas, it does not appear to us that the Legislature left something out when it overhauled the Election Law in 1954; instead, it appears that it left something in-a penalty provision that was no longer needed. Regardless, courts do not have the power to rewrite statutes to ensure they have some substantive effect. After focusing on the plain language, context, and history of § 937, we conclude that it is nothing more than an inoperative penalty provision.
As noted at the outset, we recognize that our conclusion that § 937 is an inoperative penalty provision is an unusual one, and it is not one that we reach lightly. To be clear, a statute should only be deemed inoperative after the most careful consideration of alternative **288 interpretations and rigorous application of the interpretative tools at our disposal, including the necessity of "reading individual words and phrases in the context of the entire legislative scheme."[69] This finding has historically been-and will continue to be-exceedingly rare. Indeed, as we have already stated, "[e]very word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible ."[70] Ultimately, however, we must here, as in every case, give effect to the will of the Legislature by scrupulously examining the statutory text to determine its plain meaning.
IV. CONCLUSION
We hold that § 937, by its plain language, does not set forth a substantive offense. As a result, defendant was not properly charged under § 937 with the substantive offense of election-law forgery. Therefore, his convictions must be vacated and the charges dismissed. We reverse the Court of Appeals' holding to the contrary and remand to the trial court for further proceedings not inconsistent with this *551 opinion.[71]
CLEMENT , J., took no part in the decision of this case.

Under MCL 168.961(2)(d ), signatures on a recall petition are not valid if obtained "more than 60 days before the filing of the recall petition."

People v. Pinkney , 316 Mich.App. 450, 461, 891 N.W.2d 891 (2016).

Id . at 462, 891 N.W.2d 891.

Id . at 462-465, 891 N.W.2d 891.

People v. Hall , unpublished per curiam opinion of the Court of Appeals, issued October 23, 2014 (Docket No. 321045).

"Any person found guilty of a felony under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court." MCL 168.935.

Hall , unpub op at 6. The Legislature has directed that the act containing our election laws "shall be known and may be cited as the 'Michigan election law.' " MCL 168.1.

Id . at 7.

Following this decision, the Hall prosecutor appealed a separate, unfavorable ruling in our Court. In response, the defendant did not challenge the Court of Appeals' holding that § 937 created a substantive offense, but instead argued that the Court of Appeals correctly held that the prosecution could only charge him with violating MCL 168.544c (falsifying electoral nominating petitions) and not MCL 168.937. Accordingly, in deciding the case, we declined to reach this question and instead presumed, for purposes of the appeal, that § 937 did create a substantive offense. See People v. Hall , 499 Mich. 446, 449 n 2, 453, 456, 461, 884 N.W.2d 561 (2016). Then, we reversed the Court of Appeals, holding that the prosecutor had discretion to charge the defendant under both § 937 and § 544c. Id . at 449, 884 N.W.2d 561.

Pinkney , 316 Mich.App. at 463-465, 891 N.W.2d 891.

Id . at 464, 891 N.W.2d 891.

Id .

Id . at 465, 891 N.W.2d 891.

Id . at 466, 891 N.W.2d 891.

Id . We need not address defendant's vagueness and rule-of-lenity arguments in light of our holding that MCL 168.937 does not create a substantive offense; however, we will discuss whether the statute may be understood as incorporating the common-law definition of forgery because we believe that is important to determine its meaning.

People v. Pinkney , 500 Mich. 990, 990-991, 894 N.W.2d 592 (2017).

People v. Miller , 498 Mich. 13, 16-17, 869 N.W.2d 204 (2015).

People v. Ellis , 204 Mich. 157, 161, 169 N.W. 930 (1918). The phrase "he who runs may read" is derived from the Bible, Habakkuk 2:2, and has been interpreted by a leading scholar of the early 20th century to mean "[w]rite plainly ... that it may be read runningly, i.e. without pause and hesitation." Brief Communications, He Who Runs May Read , 40 J Biblical Lit 166, 181 (1921).

Madugula v. Taub , 496 Mich. 685, 696, 853 N.W.2d 75 (2014) (quotation marks and citations omitted ).

Id .

Id . (quotation marks and citations omitted ).

This accords both with logic and the Legislature's usual practice-when the Legislature uses the phrase "found guilty" in a statute that does not describe the prohibited conduct, the statute typically prescribes penalties or consequences for conduct that is criminalized or made punishable elsewhere. For example, MCL 600.3830(2) states, "Any person found guilty of maintaining a nuisance under the provisions of this chapter shall forfeit the benefit of all property exemptions ...." Nothing in that provision could reasonably be construed as suggesting that it creates a general crime of nuisance. Instead, an individual trying to determine how to commit a nuisance "under the provisions of this chapter" would have to look elsewhere in the chapter. Unsurprisingly, MCL 600.3801 specifically provides what conduct constitutes a nuisance, and further explains that "[a] person ... who owns, leases, conducts, or maintains a building, vehicle, or place described in subsection (1) is guilty of a nuisance." Thus, based on its plain language, MCL 600.3830(2) is exactly what § 937 appears to be-a penalty provision. See also, e.g., MCL 28.468 (criminalizing conduct in Subsection 1 and providing, in Subsection 2, that "a person that is found guilty of a violation of this act shall be required to reimburse the appropriate governmental agency"); MCL 28.723a(1) ("If an individual pleads guilty to or is found guilty of a listed offense ...."); MCL 32.1085 (describing the offense of "desertion" and then providing, in a separate subsection, that "[a] person found guilty of desertion shall be punished as a court-martial directs"); MCL 752.102 ("Any person ... who shall be found guilty of a violation of the provisions of section 1 of this act, shall be deemed guilty of a misdemeanor ...."). According to at least one commentator, this is a preferred practice. See 1A Singer & Singer, Sutherland Statutory Construction (7th ed ), § 20:18, p 147 ("The better practice [when drafting criminal penalties] is to place a general penalty section at the end or near the end of the act and provide that any violation of the provisions of the act is punishable according to the terms of the penalty section.").

MCL 168.934.

MCL 168.935.

MCL 168.936.

3 Gillespie, Michigan Criminal Law & Procedure (2d ed ), § 71:18, p 555.

See Madugula , 496 Mich. at 696, 853 N.W.2d 75 ("As with any statutory interpretation, our goal 'is to give effect to the Legislature's intent, focusing first on the statute's plain language.' ") (quotation marks and citation omitted ).

Pinkney , 316 Mich.App. at 463-464, 891 N.W.2d 891.

Id . at 464, 891 N.W.2d 891.

Perkovic v. Zurich American Ins Co , 500 Mich. 44, 53, 893 N.W.2d 322 (2017).

Cf. People v. Boscgalia , 419 Mich. 556, 563-564, 357 N.W.2d 648 (1984) ("There is no indication that the present statute was intended to cover all the possible crimes dealing with transfer of title or theft of automobile parts. To the contrary, this statute is only one part of an overall statutory scheme dealing with automobiles and stolen goods in general.").

In its opinion, the Court of Appeals did state that "the meaning of [§ 937] can be fairly ascertained by reference to the common law." Pinkney , 316 Mich.App. at 466, 891 N.W.2d 891. See generally 2B Singer & Singer, Sutherland Statutory Construction (7th ed ), § 50:1, p 143 ("All legislation is interpreted in the light of the common law ...."). However, as noted above, the Court of Appeals made this observation only after concluding that § 937 created a substantive offense. See note 15 of this opinion.

People v. Reeves , 448 Mich. 1, 8, 528 N.W.2d 160 (1995), superseded by statute on other grounds by 1996 PA 20. See also MCL 8.3a (instructing that while statutory terms generally are accorded their ordinary meaning, "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."); and People v. Covelesky , 217 Mich. 90, 100, 185 N.W. 770 (1921) ("A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."), superseded by statute on other grounds as recognized by People v. Williams , 491 Mich. 164, 171-173, 814 N.W.2d 270 (2013).

Reeves , 448 Mich. at 8, 528 N.W.2d 160.

The statutory history of this provision is discussed in detail below.

By comparison, the general forgery statute, MCL 750.248(1), clearly sets forth the conduct (i.e., "a person who ... forges") and enumerates documents that, if forged, can result in a conviction under MCL 750.248(1). Likewise, every other forgery statute contains a description of what is necessary to commit forgery under those acts-and what documents are covered. For example, MCL 432.30(1) of Michigan's Lottery Act, MCL 432.1 et seq ., provides, "A person, with the intent to defraud, shall not falsely make, alter, forge, utter, pass, or counterfeit a state lottery ticket or share." And, not surprisingly, the provision is followed by a penalty provision akin to § 937-"A person convicted of violating this section is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $1,000.00, or both." MCL 432.30(3). See also MCL 205.428(7) ("A person who falsely makes, counterfeits, or alters a license, vending machine disc, or marker ... is guilty of a felony punishable by a fine of not more than $5,000.00 or imprisonment for not more than 5 years, or both."); MCL 257.310(7) (subjecting to punishment "a person who intentionally reproduces, alters, counterfeits, forges, or duplicates a license photograph, the negative of the photograph, image, license, or electronic data contained on a license ...."); MCL 257.905 ("Any person who shall forge, or without authority, sign any evidence of ability to respond in damages as required by the secretary of state ... shall be guilty of a misdemeanor ...."); MCL 257.222(6) ("A person who intentionally reproduces, alters, counterfeits, forges, or duplicates a certificate of title ... shall be punished as follows ...."); MCL 259.176a(a) (allowing the punishment of an individual under the act who "[k]nowingly forges, counterfeits, alters, or falsely makes a certificate authorized to be issued under this act or the rules promulgated under this act"); MCL 324.52908(5) ("A person who forges a bill of sale or other evidence of title prescribed by the department or the federal agency that has jurisdiction is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $100.00, or both."); MCL 324.80319(1)(a) ("A person shall not ... [a]lter or forge a certificate of title ...."); MCL 324.81112(4) (subjecting to punishment "[a] person who intentionally reproduces, alters, counterfeits, forges, or duplicates an [off-road vehicle] certificate of title"); MCL 333.7407(1)(c) ("A person shall not knowingly or intentionally ... [a]cquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge."); MCL 333.17766(c) (stating that a person is guilty of a misdemeanor if he or she "[f]alsely makes, utters, publishes, passes, alters, or forges a prescription"); MCL 436.1919 ("A person who falsely or fraudulently makes, simulates, forges, alters, or counterfeits a document, label, or stamp prescribed by the commission under this act ... is guilty of a felony ...."); MCL 168.759(8) ("A person who forges a signature on an absent voter ballot application is guilty of a felony."); MCL 28.422(14) ("A person who forges any matter on an application for a license under this section is guilty of a felony ...."); MCL 28.295(1) (subjecting to punishment "[a] person who intentionally reproduces, alters, counterfeits, forges, or duplicates an official state personal identification card photograph"); MCL 324.43558(1)(f) ("A person is guilty of a misdemeanor if the person ... [f]alsely makes, alters, forges, or counterfeits a sportcard or a hunting, fishing or fur harvester's license ....").

An example is the manslaughter statute, MCL 750.321, which provides, "Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court." Because the term "manslaughter" is not statutorily defined, this Court found it appropriate to incorporate its common-law meaning into the statute. See People v. Couch , 436 Mich. 414, 419-420, 461 N.W.2d 683 (1990). The focus of that statute is criminalizing the commission of certain conduct. Another example is MCL 750.356(1), which states that "[a] person who commits larceny by stealing any of the following property of another person is guilty of a crime as provided in this section ...." The statute makes the commission of larceny a crime, i.e., an individual who commits larceny "is guilty of a crime." Because there is no full statutory definition, the common-law definition is used to help describe how an individual commits larceny. See People v. March , 499 Mich. 389, 399-400, 886 N.W.2d 396 (2016).

As we noted in Hall , " '[t ]he common-law definition of forgery is a false making, or a making malo animo of any written instrument with intent to defraud.' " Hall , 499 Mich. at 456, 884 N.W.2d 561, quoting People v. Warner , 104 Mich. 337, 340, 62 N.W. 405 (1895).

Emphasis added.

The Court of Appeals in Hall , unpub op at 9, interpreted "forgery under the provisions of this act" to mean forgery of documents "required to be submitted under the Michigan election law." Even assuming the statutory text could bear this meaning, it would not be a reasonable interpretation, for the reader would first need to incorporate the common-law definition of "forgery" and then canvass the entire Election Law to determine what conduct could potentially result in a felony conviction. This construction is far from the clear and concise delineation of the elements of a crime that the Legislature is required to provide. People v. Goulding , 275 Mich. 353, 359, 266 N.W. 378 (1936).

Unlike legislative history, statutory history-the narrative of the "statutes repealed or amended by the statute under consideration"-properly "form[s] part of the context of the statute ...." Scalia & Garner, Reading Law: The Interpretation of Legal Texts (St. Paul: Thomson/West, 2012), p 256.

That statute, 1859 PA 177, § 20, provided as follows:
Whoever shall willfully cut, burn, mutilate or destroy any such register of electors, or copy thereof filed for preservation, or shall unlawfully take and carry away the same, or unlawfully conceal or refuse or neglect to surrender the same, with intent to prevent its being used as authorized by law, shall be deemed guilty of larceny; and whoever shall falsify any such register or copy, by unlawfully erasing or obliterating any name or entry lawfully made therein, or by unlawfully inserting therein any name, note or memorandum, with intent thereby to influence or affect the result of any election or to defraud any person of an election to office, shall be deemed guilty of forgery; and the person so offending shall, for every such offence, be punished by imprisonment in the State Prison not more than five years, or by fine not exceeding five hundred dollars and imprisonment in the county jail not more than one year, nor less than ninety days.

See 1859 PA 177, § 1 (imposing a duty on city and township officials to provide one register or book of electors for each township or ward ); 1917 PA 126, ch 2, § 5 ("The registration book or books of any township or city shall remain in the custody of the township or city clerk, as the case may be, at all times except when they are in use by boards of registration or boards of inspectors of an election or an official primary election, as provided by this act.").

That statute, 1917 PA 126, ch 2, § 8, provided as follows:
Whoever shall wilfully cut, burn, mutilate or destroy any registration book, or copy thereof filed for preservation, or shall unlawfully take and carry away any such registration book or copy, or shall unlawfully conceal or refuse or neglect to surrender the same with intent to prevent its being used, as authorized by law, shall be deemed guilty of a felony. Whoever shall falsify such registration book, or copy thereof, by unlawfully erasing or obliterating any name or entry lawfully made therein, or by unlawfully inserting therein any name, note or memorandum, shall be deemed guilty of forgery.

See 1917 PA 126, ch 2, § 8 (substantive offense); 1917 PA 126, ch 11, § 7 ("Any person found guilty of forgery under the provisions of this act shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the State Prison for a term not exceeding five years, or by both such fine and imprisonment, in the discretion of the court.").

In another public act passed the same year, Public Act 203, the Legislature enacted a penalty provision identical to the one in 1917 PA 126 except for the amount of the fine. 1917 PA 203, ch 25, § 16. It appears that this penalty provision was unaccompanied by any substantive offense, as PA 203 nowhere defined forgery. The Legislature corrected this oversight by combining multiple election provisions into a more comprehensive scheme a few years later in 1925 PA 351. That act defined the substantive offense of forgery, 1925 PA 351, part 5, ch 1, § 8, just as it had in 1917 PA 126. The act also provided the penalty for forgery-in the chapter called "Penalties"-using the same structure as the penalty provisions in 1917 PA 126 and 203. 1925 PA 351, part 5, ch 4, § 3.

Another election-related forgery statute, 1941 PA 246, § 14 (later codified at 1948 CL 200.14), made it unlawful to affix a forged name to an initiative or referendum petition. Id . (retained as MCL 168.484 after 1954 PA 116 and repealed by 1965 PA 312, § 2). While 1948 CL 200.14 did mention forgery, it has no relationship to § 937 because it provided its own punishment. See id . ("Any person found guilty of violating the provisions of this section shall be deemed guilty of a misdemeanor.").

See 1954 PA 116. As enacted, MCL 168.932(c) provided:
No inspector of election, clerk or other officer or person having custody of any record, election list of voters, affidavit, return or statement of votes, certificates, poll book, or of any paper, document or vote of any description, in this act directed to be made, filed or preserved, shall wilfully destroy, mutilate, deface, falsify or fraudulently remove or secrete the whole or part thereof, or fraudulently make any entry, erasure or alteration therein, or permit any other person to do so.
This statute, which has since been amended in style but not substance, does not list all of the same items as its predecessor. Thus, for example, it does expressly prohibit cutting, burning, or unlawfully taking and carrying away a registration book. And it adds some items to the list that were not included previously, such as "deface" and "alter[ ]." But, especially as it relates to the forgery-type conduct, the new statute appears to encompass most, if not all, of the same conduct.
Our conclusion that § 932 is a direct descendant of the original, independent substantive forgery offense is further confirmed by the official compiler's notes to its predecessor, 1948 CL 195.8. Those notes indicate that 1948 CL 195.8 originated in 1917 PA 126, ch 2, § 8, the first statute in which the substantive forgery crime was independent of the penalty provision. In other words, § 932(c) hails from the original substantive forgery offense. While the compiler's notes are not necessary to our conclusion, which follows from the plain text, the notes offer a form of support contemplated by the Legislature, which instructs that official compilations shall include "notes, references, and other materials" the compiler "considers necessary." MCL 8.41(3) ; cf. Camaj v. SS Kresge Co , 426 Mich. 281, 289, 393 N.W.2d 875 (1986) (noting that marginal notations in a statute can provide persuasive, but not conclusive, proof of meaning).

MCL 168.932(c).

Id .

See 1954 PA 116.

See 1954 PA 116. MCL 168.957, which governs the conduct of petition circulators, was amended by 1976 PA 66 and currently provides:
A person circulating a petition shall be a qualified and registered elector in the electoral district of the official sought to be recalled and shall attach thereto his certificate stating that he is a qualified and registered elector in the electoral district of the official sought to be recalled and shall state the city or the township wherein he resides and his post-office address; further, that signatures appearing upon the petition were not obtained through fraud, deceit, or misrepresentation and that he has neither caused nor permitted a person to sign the petition more than once and has no knowledge of a person signing the petition more than once; that all signatures to the petition were affixed in his presence; and that to the best of his knowledge, information, and belief, the signers of the petition are qualified and registered electors and the signatures appearing thereon are the genuine signatures of the persons of whom they purport to be. A person who knowingly makes a false statement in the certificate hereby required is guilty of a misdemeanor.
Defendant was acquitted of six misdemeanor counts under this statute for allegedly permitting six individuals to sign the recall petition twice. He was convicted of five felony counts under MCL 168.937 for altering the dates of some petition signatures so they would count for the recall. Amicus curiae the American Civil Liberties Union of Michigan makes the interesting point that § 957 may also be a potential avenue of prosecution for altering dates. We, of course, offer no opinion on the validity of this argument because the issue is not before us and involves a matter of prosecutorial discretion.

See note 47 of this opinion.

See 1995 PA 261. MCL 168.759(8), like § 932(c), does not rely on § 937 to define the scope of the punishment for a violation of its provisions. Instead, it also designates the forgery offense it creates as a felony, making it punishable under the general felony penalty provision (§ 935), not under § 937.

If it is true (and we think it is) that "a change in the language of a prior statute presumably connotes a change in meaning," Reading Law , p 256, the converse seems even more obviously true: namely, that no change in the text connotes no change in its meaning.

In particular, the Court of Appeals opined that interpreting § 937 as a penalty provision would render it surplusage because § 935 already "sets forth the penalties for a felony conviction under the provisions of the Michigan Election Law ...." Pinkney , 316 Mich.App. at 464, 891 N.W.2d 891.

Miller , 498 Mich. at 25, 869 N.W.2d 204 (quotation marks and citation omitted ).

Cooley, Constitutional Limitations (1868), p 58 (some emphasis added ). The roots of the surplusage canon may be traced even further. See 2 Blackstone, Commentaries on the Laws of England, pp. *379-380 ("That the construction be made upon the entire deed, and not merely upon disjointed parts of it. 'Nam ex antecedentibus et consequentibus fit optima interpretatio .' And therefore that every part of it, be (if possible) made to take effect; and no word but what may operate in some shape or other.").

People v. Seewald , 499 Mich. 111, 123, 879 N.W.2d 237 (2016) (emphasis added ). Although we have sometimes stated the canon in absolute terms, see, e.g., Miller , 498 Mich. at 25, 869 N.W.2d 204, we have also articulated the canon in nonabsolute terms, see, e.g., Seewald , 499 Mich. at 123, 879 N.W.2d 237 ; State Bd. of Ed. v Houghton Lake Community Sch. , 430 Mich. 658, 671, 425 N.W.2d 80 (1988) ("[E]very word of a statute should be given meaning, and no word should be treated as surplusage or rendered nugatory if at all possible .") (emphasis added ); Baker v. Gen. Motors Corp. , 409 Mich. 639, 665, 297 N.W.2d 387 (1980) ("Every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible."). The latter formulation comports with the canon's historical roots, the jurisprudence of the United States Supreme Court, and outside authorities. Marx v. Gen. Revenue Corp. , 568 U.S. 371, 385, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) ("The canon against surplusage is not an absolute rule ...."); Lamie v. United States Trustee , 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute."); Reading Law , p 174 ("If possible , every word and every provision is to be given effect[.]") (emphasis added; formatting altered ).

Microsoft Corp. v. i4i Ltd. Partnership , 564 U.S. 91, 106, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011) (quotation marks and citations omitted ).

Section 932(c) is discussed in detail in Part III(B) of this opinion.

See Microsoft Corp , 564 U.S. at 106, 131 S.Ct. 2238.

See Connecticut Nat'l Bank v. Germain , 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (stating in relation to the surplusage canon that "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quotation marks and citations omitted ).

Goulding , 275 Mich. at 359-360, 266 N.W. 378 ("The statute may not be extended beyond its plain terms by judicial construction, and defendant convicted, by showing acts which ought to have been within the terms of the statute but are not. There are no constructive criminal offenses .") (emphasis added ).

Another lens through which to view this case is the unintelligibility canon. That canon applies when statutory language makes no sense because it is intractably ambiguous or because two provisions are irreconcilable. Reading Law , pp. 134-135. In such cases, the unintelligible text is inoperative and cannot be given effect because it is meaningless. In this case, § 937 has a clear semantic meaning-it is a penalty provision. When viewed in its larger statutory context, however, it could be considered meaningless because, as a penalty with no corresponding substantive offense, it has no effect. Considered thusly, we agree with Justice Scalia and Professor Garner that "[t ]o give meaning to what is meaningless is to create a text rather than to interpret one." Id . at 134. Although the unintelligibility canon contains parallels to this case, we take no position on whether it applies here because no party has raised the issue.

See People v. Oakland Co Bank , 1 Doug 282, 287 (1844) ("We cannot, in order to give effect to what we may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, though the consequence be to defeat the object of the act[.]"). See also King v. Barham , 108 Eng. Rep. 980, 982; 8 B & C 100 (1828) ("Our decision may, perhaps, in this particular case, operate to defeat the object of the [statute]; but it is better to abide by this consequence than to put upon it a construction not warranted by the words of the Act, in order to give effect to what we may suppose to have been the intention of the Legislature.").

See Malpass v. Dep't of Treasury , 494 Mich. 237, 251, 833 N.W.2d 272 (2013) (" '[T]o supply omissions transcends the judicial function.' "), quoting Iselin v. United States , 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926). See also Hobbs v. McLean , 117 U.S. 567, 579, 6 S.Ct. 870, 29 L.Ed. 940 (1886) ("When a provision is left out of a statute, either by design or mistake of the legislature, the courts have no power to supply it. To do so would be to legislate and not to construe."); Jones v . Smart , 1 Term Rep. 44, 52 (1785) ("[W]e are bound to take the act of parliament, as they have made it: a casus omissus can in no case be supplied by a court of law, for that would be to make laws; nor can I conceive that it is our province to consider, whether such a law that has been passed be tyrannical or not."); Crawford v. Spooner , 18 Eng. Rep. 179, 6 Moore, PC 1 (1846) ("The construction of the Act must be taken from the bare words of the Act. We cannot fish out what possibly may have been the intention of the Legislature; we cannot aid the Legislature's defective phrasing of the Statute; we cannot add, and mend, and, by construction, make up deficiencies which are left there."); Reading Law , p 93 ("Nothing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est ). That is, a matter not covered is to be treated as not covered.") (formatting altered ); Crawford, Construction of Statutes (1940), § 169, p 269 ("Omissions in a statute cannot, as a general rule, be supplied by construction. ... As is obvious, to permit the court to supply the omissions in statutes, would generally constitute an encroachment upon the field of the legislature.").

See Endlich, Commentary on the Interpretation of Statutes (1888), § 22, p 29 ("It has been seen that the plain meaning of the language used in a statute will not be departed from in its construction, though the purpose of the enactment be defeated by following it. Upon the same principle, courts cannot supply legislative defects and omissions, although, by reason of such, the statute becomes, in whole or in part, practically unenforceable or inoperative."), citing In re Willis Ave. , 56 Mich. 244, 250, 22 N.W. 871 (1885) (holding that a statute, through the oversight of the Legislature, failed to provide a procedure to effectuate the expressed intent of the statute, rendering that portion of the statute inoperative). See also C.N. Ray Corp. v. Secretary of State , 241 Mich. 457, 461, 217 N.W. 334 (1928) (holding that an act that expressly purported to repeal prior statutes failed to repeal anything because it lacked a necessary repealing clause); People v. Boothe , 16 N.Y.3d 195, 944 N.E.2d 1137, 919 N.Y.S.2d 498 (2011) (holding that where the legislature added a new definition of criminal conduct without amending the substantive provision to make that conduct unlawful, no crime was created and the charges were properly dismissed ); Farmers' Bank of Fayetteville v. Hale , 59 N.Y. 53, 57-58 (1874), overruled on other grounds by Hintermister v. First Nat'l Bank of Chittenango , 64 N.Y. 212 (1876) ("It is said that this [interpretation] renders the statute inoperative, and that this result must be avoided. This is a plausible but not a valid or sound position. There is nothing in the Constitution nor in any legal principle to prevent the legislature from passing an act with provisions which render it inoperative. When different constructions may be put upon an act, one of which will accomplish the purpose of the legislature and the other render the act nugatory, the former should be adopted; but when the provisions of an act are such that to make it operative would violate the declared meaning of the legislature, courts should be astute in construing it inoperative.").

Madugula , 496 Mich. at 696, 853 N.W.2d 75.

Baker , 409 Mich. at 665, 297 N.W.2d 387 (emphasis added ).

Because we hold that § 937 does not create a substantive offense, we do not reach defendant's argument that the trial court improperly admitted other-acts evidence under MRE 404(b). Additionally, because we hold that § 937 unambiguously sets forth a penalty provision and not a substantive offense, we do not reach defendant's additional arguments that the rule of lenity precludes enforcement of § 937 against defendant or that § 937 is void for vagueness.