*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARLON CURTIS HENDERSON II,

        Defendant-Appellant.

UNPUBLISHED
July 25, 2024

No. 369476
Wayne Circuit Court
LC No. 23-003485-01-FC

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Over objection, defendant was bound over for trial by the district court on, in part, the charge of disarming a peace officer, MCL 750.479b(2). In the circuit court, defendant moved to quash the information and dismiss that charge on the basis that there was a complete absence of evidence showing that when the officer was being disarmed, he was performing his duties as a peace officer, which is an element of the offense. The circuit court denied the motion, and defendant appeals by leave granted.[1] We reverse and remand for entry of an order quashing the information and dismissing the disarming-a-peace-officer charge, as well as the connected charge of possession of a firearm during the commission of a felony (felony-firearm).[2]

## I. BACKGROUND

This case stems from an incident in which defendant allegedly took a police officer's gun from his pocket at a gas station. At the preliminary examination, Detroit Police Department Officer Kirk Shack testified that on June 10, 2023, he was driving his personal vehicle on the way to start his shift or detail in Greektown when he stopped at a gas station to fill his tank and pick up some snacks. Officer Shack was wearing his "Class B" uniform at the time, which consisted of a

---

[1] *People v Henderson II*, unpublished order of the Court of Appeals, entered February 26, 2024 (Docket No. 369476).

[2] Defendant was bound over to the circuit court on several additional charges, which are not at issue in this appeal.

Detroit Police polo shirt that displayed police insignia on the front and a name tag near the breast area. But Officer Shack was not wearing his official officer badge, his holster belt, or his vest, nor was he carrying his police radio on his person. Because he was not wearing his police belt, his service gun was in his pant's pocket.

While Officer Shack was waiting in line to pay for his snacks inside the gas station, defendant reached into the officer's pocket and removed his duty weapon. Defendant attempted to run away, but Officer Shack tackled him to the ground. At that point, a second man appeared, later identified as Dwayne Whitley, Jr., and Whitley pointed a gun at Officer Shack. Both defendant and Whitley then fled the gas station, and Officer Shack returned to his personal vehicle. Officer Shack proceeded to call his supervisor using his personal cellphone to report what had occurred. The incident occurred around 5:30 p.m.; Officer Shack's patrol shift was not scheduled to start until 6:45 p.m.

Officer Shack further testified that he had not been "on the clock" at the time that he was disarmed by defendant, nor was he getting paid at that time. Because he had yet to arrive for his shift, he was not wearing his full uniform. Officer Shack stated that he planned to put on his complete uniform, including his badge and his holster belt, once he arrived at his detail. Officer Shack again confirmed that he had been "on [his] way to work" when the incident took place. Additionally, he testified that he had been at the gas station "as a patron" and not "in [his] capacity as a police officer." Detroit Police Officer Hallie Mackson testified that she was the officer-in-charge of the case. She confirmed that Officer Shack was not in his complete uniform at the time of the charged offense.

At the conclusion of the preliminary examination, defendant moved to dismiss the charge of disarming a peace officer because the prosecution did not present sufficient evidence to establish probable cause that Officer Shack had been performing his duties as a peace officer when he was disarmed. Defendant argued that Officer Shack had not been wearing a complete uniform and was merely on his way to work when the incident occurred. The prosecution contended that Officer Shack had been "in the course of his duties when he [was] on his way to the police station to begin his shift." The district court rejected defendant's argument and bound him over on the charge of disarming a peace officer.

In the circuit court, defendant moved to quash the information and dismiss the charge relative to the offense of disarming a peace officer. Defendant once again argued that the evidence demonstrated that Officer Shack was not performing his duties as a peace officer at the time he was disarmed. Specifically, defendant maintained that Officer Shack had not been wearing his badge, had not started his patrol shift, was driving his own personal vehicle, and was at the gas station on personal business, i.e., to fill his gas tank and buy snacks. In response, the prosecution argued that the issue regarding whether Officer Shack had been performing his duties as a peace officer was a factual question for the jury to resolve. The prosecution claimed that because Officer Shack was wearing a uniform and had been on his way to start his patrol shift in Greektown, he was "in the course of his duties" at the time of the incident.

At the hearing on the motion, the parties presented arguments consistent with their written submissions. Ruling from the bench, the circuit court denied defendant's motion. The court noted that it had not located any caselaw construing MCL 750.479b(2) on the issue concerning whether

-2-

an officer was performing his or her duties when disarmed. But the circuit court found that because Officer Shack had been wearing his partial uniform at the time of the criminal act, any reasonable person would have easily identified him as a police officer. The court ruled that the issue in dispute constituted a question for the jury to evaluate and determine. Defendant appeals by leave granted.

## II. ANALYSIS

In *People v Waltonen*, 272 Mich App 678, 683-684; 728 NW2d 881 (2006), this Court set forth the principles relevant to our review in the instant case:

> A circuit court's ruling regarding a motion to quash an information and the district court's decision to bind over a defendant are reviewed to determine whether the district court abused its discretion in making its decision. However, where the decision entails a question of statutory interpretation, i.e., whether the alleged conduct falls within the scope of a penal statute, the issue is a question of law that we review de novo.

> The primary function of a preliminary examination is to determine whether a felony has been committed and, if so, whether there exists probable cause to believe that the defendant committed the felony. Probable cause requires evidence sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt. The magistrate, however, need not be without doubts regarding guilt. Following the conclusion of the preliminary examination, if it appears to the district court that there is probable cause to believe that a felony was committed and that the defendant committed it, the court must bind the defendant over for trial. [Quotation marks and citations omitted.]

"Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support a bindover." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010) (quotation marks and citation omitted). The prosecution "is not required to prove each element of the crime beyond a reasonable doubt." *People v Brown*, 239 Mich App 735, 741; 610 NW2d 234 (2000) (quotation marks and citation omitted).

When interpreting a statute, this Court first focuses on the plain language of the statutory provision, striving to accomplish the goal of giving effect to the intent of the Legislature. *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018). We must read individual words and phrases in the context of the entire legislative scheme, examining the statute as a whole. *Id.* When the language of a statute is clear and unambiguous, the statute must be enforced as written, and no further judicial construction is required or permitted. *Id.* If at all possible, every word in a statute should be given meaning and no word should be rendered nugatory or treated as surplusage. *Id.* at 288. Unless statutory words are defined in the statute, are technical in nature, or constitute terms of art, we assign the words their plain and ordinary meaning. *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008).

MCL 750.479b(2) provides:

> An individual who takes a firearm from the lawful possession of a peace officer or a corrections officer is guilty of a felony punishable by imprisonment for

not more than 10 years or a fine of not more than $5,000.00, or both, *if all of the following circumstances exist at the time the firearm is taken*:

> (a) The individual knows or has reason to believe the person from whom the firearm is taken is a peace officer or a corrections officer.

> (b) *The peace officer or corrections officer is performing his or her duties as a peace officer or a corrections officer.*

> (c) The individual takes the firearm without the consent of the peace officer or corrections officer.

> (d) The peace officer or corrections officer is authorized by his or her employer to carry the firearm in the line of duty. [Emphasis added.]

We conclude that there was no evidentiary basis to find that probable cause existed to bind defendant over for trial on the offense of disarming a peace officer because there was an absolute dearth of evidence showing that at the time Officer Shack's firearm was taken, he was performing his duties as a peace officer.[3] The district court and the circuit court abused their discretion and otherwise erred by allowing the charge to go forward. When Officer Shack was relieved of his gun, he was standing in line inside a gas station waiting to pay for snacks after having stopped at the station to tank gas for his personal vehicle and to buy snacks before he started his shift or detail as a Detroit police officer in Greektown. We find that his actions in no way concerned the exercise of his duties as a peace officer. The fact that Officer Shack was partially attired in police garb was relevant to whether defendant knew or had reason to know that the officer was indeed a peace officer. And while one might reasonably infer from such evidence, if viewed in a vacuum, that Officer Shack was performing his duties as a peace officer during the pertinent timeframe, all of the surrounding circumstances definitively established that he was not performing any duty related to his job as a police officer. We note that our ruling is not premised simply on the fact that Officer Shack had not yet started his shift. Although it weighed in favor of that conclusion, there certainly can be instances when a peace officer is performing the duties of an officer when not on the clock. For example, everything else being the same, had Officer Shack entered the gas station and interrupted a robbery, at which point he employed his training in response to the robbery and was then disarmed of his service weapon, there would be a cogent basis to find that he was disarmed while performing his duties as a peace officer.[4] But we have no facts that even remotely resemble that hypothetical. Defendant also faced a charge of felony-firearm with the disarming charge as the underlying felony. The circuit court must quash that charge as well as it is no longer supportable.

---

[3] We note that the prosecution has not filed an appellee brief on appeal.

[4] We also believe that there can be unique circumstances in which a police officer is disarmed in the middle of his or her shift while in full uniform, yet the officer was not performing the duties of a peace officer at the time, as where, for example, the officer is improperly running a personal errand contrary to the officer's assigned duties when the larcenous act occurred.

We reverse and remand for an order quashing the information and dismissing the charge with respect to the offense of disarming a peace officer and the connected felony-firearm charge. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett