# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW J. SHIFFMAN,

      Plaintiff-Appellant,

v

AUTO SOURCE WHOLESALE, LLC and
JAMES M. KATZ,

      Defendants-Appellees,

and

JEFFREY L. KATZ, Individually and as Trustee
of the MARTHA L. KATZ REVOCABLE
LIVING TRUST U/A 03/08/1993 FBO J. KATZ,
and the MARTHA L. KATZ REVOCABLE
LIVING TRUST U/A 03/08/1993 FBO J. KATZ,

      Defendants.

UNPUBLISHED
August 14, 2018

No. 339291
Oakland Circuit Court
LC No. 2016-154248-CK

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

O'BRIEN J. (*dissenting*).

The majority broadly interprets "stealing" in MCL 600.2919a to conclude that a "stealing" claim permits recovery for a taking by false pretenses. In so doing, the majority summarily dismisses basic principles of statutory interpretation to reach a result that runs against the Legislature's clear intent. Because I would not broadly interpret "steal" when used in MCL 600.2919a, I respectfully dissent.

MCL 600.2919a does not define "stealing" for purposes of the statute. When interpreting statutory language, this Court must ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute. *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 102; 767 NW2d 668 (2009). "We must give every word its plain and ordinary meaning, unless otherwise defined, and may rely on dictionary definitions." *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012).

-1-

Plaintiff argues that we should rely on a legal dictionary's definition of "steal," but does not argue that "stealing" as used in MCL 600.2919a(1) has acquired a unique legal meaning.[1] "A lay dictionary may be consulted to define a common word or phrase that lacks a unique legal meaning. A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." See *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). Because I see no reason to conclude that "steal" has acquired a unique legal meaning—and neither plaintiff nor the majority provides an argument to the contrary—this Court may consult a lay dictionary to define that term.

*Random House Webster's College Dictionary* (2000) defines "steal" as "to take (the property of another or others) without permission or right, esp. secretly or by force," and "to appropriate . . . without right or acknowledgment."[2] See also *People v Pratt*, 254 Mich App 425, 428; 656 NW2d 866 (2002) (using the definition of "steal" from *Random House* to define "stolen" as used in MCL 750.535(3)(a)). Plaintiff argues, and the majority accepts, that "steal" should be defined by reference to *Black's Law Dictionary*, which defines "steal" as "[t]o take (personal property) illegally with the intent to keep it unlawfully," or "[t]o take (something) by larceny, embezzlement, or false pretenses." *Black's Law Dictionary* (10th ed). Both definitions of "steal" in *Black's Law Dictionary* are broad and encompass a taking by embezzlement: a taking by embezzlement is an illegal taking and therefore falls within the first definition, and the second definition expressly states that "steal" means "[t]o take something by . . . embezzlement." Thus, if we were to apply either definition from *Black's Law Dictionary*, then the separate claim of "embezzling property" in MCL 600.2919a is rendered surplusage. This violates the basic principle

---

[1] I point out that plaintiff urges us to accept a legal dictionary's definition of "steal" without consideration of whether reference to a different dictionary may be appropriate. To be clear, it is a *fact* that plaintiff does not argue that "steal" has acquired a unique legal meaning. This fact is not a reason for why I am unpersuaded by the majority opinion. Moreover, this fact is relevant: if plaintiff argued that "stealing" had a unique legal meaning, this Court would need to address that argument. And if plaintiff's argument prevailed, then this Court would be *required* to construe "stealing" in accordance with its legal meaning. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008) ("A legal term of art, however, *must* be construed in accordance with its peculiar and appropriate legal meaning.") (Emphasis added).

[2] The majority states that "*Black's Law Dictionary* is among the 'most useful and authoritative [dictionaries] for the English language generally,' " and it ascribes this assertion to Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), pp 419 & 424. This quote from *Reading Law* is taken out of context. The actual quote reads, "Among contemporaneous-usage dictionaries—those that reflect meanings current at a given time—the following are the most useful and authoritative for the English language generally and for law." *Reading Law*, p 419. *Reading Law* then lists "English Language" dictionaries and "Law" dictionaries that it believes are the most authoritative for given time periods. The "English Language" dictionary listed as the most authoritative for "2001-present" is *The Oxford English Dictionary*, not *Black's Law Dictionary*. *Reading Law*, p 423. *Black's Law Dictionary* is listed as the most authoritative "Law" dictionary for 2001-present. *Reading Law*, p 424.

that *effect is to be given, if possible, to the whole instrument, and to every section and clause*. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory. [*People v Pinkney*, 501 Mich 259, 283; 912 NW2d 535 (2018), quoting Cooley, Constitutional Limitations (1868), p 58 (emphasis in *Pinkney*).]

Although the majority is correct that the canon against surplusage is not an absolute rule, the majority ignores that the canon should be used " '[w]*hen possible . . .* to avoid constructions that would render any part of the Legislature's work nugatory.' " *Pinkney*, 501 Mich at 283, quoting *People v Seewald*, 499 Mich 111, 123; 879 NW2d 237 (2016) (emphasis in *Pinkney*). In other words, interpreting words in a statute as having "no meaning" and "no substantive effect" "should be regarded as the exception rather than the rule." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012) p 178.

I see no reason to conclude that this case is exceptional so the rule against surplusage should not apply.[3] This Court is faced with two choices: (1) apply the broad legal definition of

---

[3] The majority provides some insight into why it believes that the canon against surplusage does not apply, but its reasoning is general; it fails to provide any reason for why we should ignore the canon against surplusage *in this case*.

Recently, our Supreme Court declined to apply the canon against surplusage, and its reasoning for not doing so was six pages long. See *Pinkney*, 501 Mich at 282-288. That reasoning was directly related to interpreting the statute at issue. After declining to apply the canon, our Supreme Court drove home that its "finding has historically been—and will continue to be—exceedingly rare" because "[e]very word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory *if at all possible*." *Pinkney*, 501 Mich at 288 (quotation marks and citation omitted; emphasis in *Pinkney*). Yet rather than justify its "exceedingly rare" finding, the majority simply states, "As the canon of surplusage is not an absolute rule, we decline to adopt the dissent's reasoning."

Moreover, the majority ignores that, when the rule against surplusage is disregarded, it is generally done in favor of adopting a word's ordinary meaning. See *Reading Law*, p 176 ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage."). Yet the majority disregards the ordinary meaning of the word "steal" and instead adopts the definition from a legal dictionary. Ironically, in *Moskal v United States*, 498 US 103, 120; 111 S Ct 461; 112 L Ed 2d 449 (1990) (SCALIA, J., dissenting), to which the majority cites, Justice SCALIA reasoned that the term "falsely made" should be afforded "its ordinary meaning" rather than a more technical one.

And contrary to the majority's apparent assertion, Justice SCALIA's dissent in *Moskal* does not support declining to use the canon against surplusage in this case. Justice SCALIA reasoned that the drafters were likely repeating themselves because at least two words in the statute at issue were each defined as synonyms *for each other*. *Id*. ("As the United States conceded at oral argument, and as any dictionary will confirm, 'forged' and 'counterfeited' mean

-3-

"steal" from *Black's Law Dictionary*, which would render the separate claim of "embezzling property" in MCL 600.2919a surplusage, or (2) apply the definition of "steal" from a lay dictionary, which would give independent effect to every part of MCL 600.2919a. "If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provisions of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred." *Reading Law*, p 176. Here, because the definition of "steal" in *Black's Law Dictionary* would render part of MCL 600.2919a surplusage, I would reject that definition and adopt a lay dictionary's definition of the word.[4]

Under *Random House*'s definition of "steal," defendants are only liable to plaintiff if they took plaintiff's property without permission or right. The undisputed evidence established that plaintiff willingly loaned defendants $250,000 and consented to the transfer of that money to defendants. Thus, defendants took plaintiff's property with plaintiff's permission, and the property was never "stolen" under MCL 600.2919a. Although the evidence established that plaintiff loaned defendants the money under false pretenses, I would hold that MCL 600.2919a does not provide a cause of action for false pretenses. As noted by the majority, "false pretenses"—a legal term of art—is "[t]he crime of knowingly obtaining title to another person's personal property by misrepresenting a fact with the intent to defraud." *Black's Law Dictionary* (10th ed). Once a person obtains title to property, he or she "cannot steal it." *People v March*, 499 Mich 389, 405; 886 NW2d 396 (2016) ("The first rule is that a person in the rightful possession[5] of property cannot steal it."). Thus, a taking by false pretenses does not fit into a

---

the same thing. See, *e.g.*, Webster's 2d, *supra*, at 607 (defining to 'counterfeit' as to 'forge,' and listing 'forged' as a synonym of the adjective 'counterfeit'), *id*., at 990 (defining to 'forge' as to 'counterfeit,' and listing 'counterfeit' as a synonym of 'forge'). Here, *Black's Law Dictionary* does not list or define "steal" as a synonym for "embezzlement." In fact, no dictionary that I could find lists "steal" as a synonym for "embezzlement." In my opinion, this suggests that, although "steal" may encompass "embezzlement" when used alone, when "steal" and "embezzlement" are used together they are *not* intended as synonyms.

[4] The majority appears to rely on the United States Supreme Court's use of *Black's Law Dictionary*'s definition of "steal" in *United States v Turley,* 352 US 407, 411; 77 S Ct 397; 1 L Ed 2d 430 (1957), to bolster its conclusion. But the statute at issue in *Turley* was completely dissimilar to the one at issue here; the *Turley* statute listed only a charge for "stolen" property and did not include a separate charge for "embezzled" property. Thus, the *Turley* Court was not faced with a situation where the rule against surplusage could apply, and it provides no support for the majority's conclusion. It also bears noting that *Pratt*—the only published case in Michigan to interpret "stolen" or "steal"—relied on a lay dictionary to define the term. See *Pratt*, Mich App at 428. For whatever reason, the majority cites *Turley* and ignores *Pratt*.

[5] Using either a lay dictionary or legal dictionary, "title" is defined as the elements constituting legal ownership, which includes possession. See *Black's Law Dictionary* (10th ed) (defining "title" as "[t]he union of all elements (as ownership, *possession*, and custody) constituting the legal right to control and dispose of property") (emphasis added); *Meriam Webster's Collegiate Dictionary* (11th ed) (defining "title" as "all the elements constituting legal ownership").

lay dictionary's definition of steal. Because I would adopt the lay dictionary's definition of "steal," and because there is no genuine issue of material fact that defendants acquired plaintiff's $250,000 with plaintiff's permission, I would affirm the trial court.

The majority disagrees with this conclusion and states that "defendants' conduct also fits within the dissent's preferred definition of 'steal' which amounts to a violation of MCL 600.2919a." The majority seems to believe that it is wrong to conclude that "Katz rightfully took plaintiff's money." But it is unclear why the majority believes this; it is undisputed that plaintiff loaned—and Katz took—the money based on a valid contract, and plaintiff has since collected on that contract. In other words, the money was loaned with plaintiff's permission, and Katz "rightfully" took the loan money. Although Katz lied to induce plaintiff to loan him the money, this does not affect whether the money was given to defendants with plaintiff's permission. If defendants' fraud could somehow be construed as defendants taking plaintiff's property without plaintiff's permission, the crime of false pretenses would have never been created; "false pretenses" would have been considered a type of "unauthorized taking" and fallen under the umbrella of larceny. See LaFave & Scott, *Criminal Law* (St. Paul: West, 2nd ed, 1986), pp 702-704; see also *March*, 499 Mich at 407, quoting *Metamorphosis of Larceny*, 89 Harv L Rev at 475 (explaining that, at common law, "anyone in rightful possession of property[] was endowed with a sort of 'possessorial immunity' such that 'those who acquired possession over chattels were not subject to criminal liability for subsequent misappropriation' "). Simply put, it is clear that Katz *did* "rightfully [take] plaintiff's money," regardless of how wrong Katz's intent was in so doing.[6]

---

[6] The majority characterizes Katz's actions as "a misappropriation for a purpose for which the plaintiff did not give him permission to do." The majority also states that "defendants falsely took plaintiff's money and used it for personal and other expenses unrelated to the purported 'loan' agreement with plaintiff and did so without plaintiff's permission or having any right or authority to do so." Contrary to the majority's apparent assertions, neither the loan agreement nor the guaranty agreement specified how the loan was to be used; rather, the parties' only agreed on the terms of repayment. Thus, there was no "misappropriation for a purpose for which the plaintiff did not give him permission to do" because the money was loaned without restrictions. Likewise, the majority is incorrect that defendants used the loan for "expenses unrelated to the purported 'loan' agreement . . . without plaintiff's permission or having any right or authority to do so" because (1) the loan agreement did not specify how the loan funds were to be used so defendants' use of the funds could not be "unrelated to the" loan agreement, (2) nothing in the parties' agreement stated that defendants needed plaintiff's permission to use the loan funds, and (3) once the funds were transferred to defendants, defendants had the "right or authority" to spend the money.

It is unclear why the majority believes that defendants' use of the loan funds is an issue. Defendants' use of the funds certainly show that Katz's intent was to defraud plaintiff, but it does not establish that defendants took plaintiff's money without his permission. Obviously, Katz's actions were wrong; he defrauded plaintiff into loaning him money, used the money for personal gain, and refused to repay plaintiff when the loan came due. But none of that is relevant to whether Katz came into possession of plaintiff's money without plaintiff's permission. And

Ultimately, we are faced with two definitions of "steal": one that includes a claim for false pretenses and renders the separate claim of "embezzling property" in MCL 600.2919a surplusage, and one that does not include a claim for false pretenses but gives meaning to the entirety of MCL 600.2919a. The Legislature is presumed to be familiar with the rules of statutory construction. *Alma Piston Co v Dep't of Treasury*, 236 Mich App 365, 370; 600 NW2d 144, 147 (1999). I would therefore faithfully apply the canon against surplusage and conclude that the proper definition of "steal" as used in MCL 600.2919a is the one that does not render the separate claim of "embezzling property" surplusage. If, as the majority concludes, the Legislature did not intend what it wrote, I would leave that for the Legislature to fix.[7] For these reasons, I dissent.

/s/ Colleen A. O'Brien

---

because the undisputed facts are that defendants took plaintiff's money with permission, their actions should not constitute "stealing" under MCL 600.2919a.

[7] While I do not necessarily take issue with the majority's reference to MCL 750.218(11) to define "false pretenses," MCL 750.218(11) begins with, "As used in this section," and our Supreme Court has stated, "By specifically limiting the applicability of [a] definition to certain statutory provisions, the Legislature expressed a clear intent that the definition should not be applied elsewhere." *People v Mazur*, 497 Mich 302, 314; 872 NW2d 201 (2015). The majority does not discuss whether MCL 600.2919a should be read *in pari materia* with MCL 750.218 to justify adopting that section's definition. See *id*. at 313. Assuming that the majority would conclude that the statutes should be read *in pari materia*, I see no reason why MCL 600.2919a should not also be read *in pari materia* with MCL 750.535, the statute criminalizing receiving or concealing stolen property. This Court has already held that "steal" as used in MCL 750.535 should be defined by reference to a lay dictionary, see *Pratt*, 254 Mich App at 428, so if the statutes are *in pari materia*, then "steal" in MCL 600.2919a must be interpreted in accordance with *Pratt*.

This aside, the majority's decision as it now stands in opposition to *Pratt* leads to an odd result: a person that knowingly aids in the concealment of property acquired under false pretenses can be liable for concealing stolen property under MCL 600.2919a(1)(b), but cannot be guilty of concealing stolen property under MCL 750.535(1), despite the statutes' remarkable similarities. Compare MCL 600.2919a(1)(b) (permitting recovery based on "[a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted") with MCL 750.535(1) ("A person shall not buy, receive, possess, conceal, or aid in the concealment of stolen, embezzled, or converted money, goods, or property knowing, or having reason to know or reason to believe, that the money, goods, or property is stolen, embezzled, or converted.").