*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. TAYLOR, Minor.

UNPUBLISHED
August 15, 2019

No. 347833
Jackson Circuit Court
Family Division
LC No. 18-003119-NA

In re T. TAYLOR, Minor.

No. 347839
Jackson Circuit Court
Family Division
LC No. 18-003120-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

In these consolidated cases, respondent-father appeals as of right the trial court's order terminating his parental rights to two minor children, TT and AT1, under MCL 712A.19b(3)(b)(*i*) (sibling of the child suffered sexual abuse and there is a reasonable likelihood of injury or abuse in the foreseeable future) and (b)(*ii*) (failure to protect from sexual abuse and there is a reasonable likelihood of injury or abuse in the foreseeable future). We reverse and remand for additional proceedings.

## I. BACKGROUND

This case commenced when the Department of Health and Human Services (DHHS) filed two separate petitions seeking the termination of respondent's parental rights. Although the particular circumstances remain unclear, the petitions alleged receipt of a complaint about domestic violence between respondent and AT1's mother. Upon further investigation, the DHHS learned that in 2006, Children's Protective Services (CPS) in Wexford County substantiated respondent for sexual abuse of another child, AT2. The petitions further alleged that respondent sexually penetrated then-four-year-old AT2's vagina with his penis, but no criminal charges resulted because AT2 was too afraid to testify against respondent. At the time

-1-

of trial, AT2 was 18 years old and no longer afraid to testify against respondent, whom she had not seen in 14 years. At the termination hearing, AT2 described how respondent sexually assaulted her. The trial court found AT2's testimony credible, describing AT2 as "one of the most credible witnesses that has ever taken the witness stand." Based on AT2's testimony, the trial court found that the DHHS had established by clear and convincing evidence grounds for termination under MCL 712A.19b(3)(b)(*i*) and (*ii*), and concluded that termination was in the children's best interests. Thereafter, the trial court entered an order terminating respondent's parental rights to TT and AT1. Respondent now appeals.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred when it found that the DHHS had established grounds for termination by clear and convincing evidence. We agree.

### A. STANDARD OF REVIEW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

### B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (*ii*). Those sections provide that the trial court may terminate parental rights if it finds by clear and convincing evidence that:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home. [MCL 712A.19b(3)(b)(*i*) and (*ii*).]

In *In re Sours*, 459 Mich 624, 634-635; 593 NW2d 520 (1999), our Supreme Court explained that this statutory language

makes clear [that] not only does the prosecution have the burden of showing by clear and convincing evidence that the parents injured or abused the children, or failed to protect the children from injury or abuse, but the prosecution must also

show a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home. [Quotation marks and citation omitted.]

We generally defer to a trial court's ability to judge the credibility of a witness, see *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009), and we have no reason to question the trial court's determination that AT2 was credible. We therefore conclude that, based on AT2's testimony about the sexual assault, the trial court did not clearly err in finding by clear and convincing evidence that respondent sexually abused his then-four-year-old daughter 14 years before the termination hearing.[1]

Yet, as *In re Sours* made clear, petitioner had to not only show that respondent sexually abused TT and AT1's sibling, but it had to establish by clear and convincing evidence that there is a reasonable likelihood that TT and AT1 will suffer from injury or abuse in the foreseeable future if placed in respondent's home. See *id*.; MCL 712A.19b(3)(b)(*i*) and (*ii*). While the trial court's oral opinion[2] explains in detail the evidence establishing that TT and AT1's sibling was sexually abused, the trial court failed to explain what evidence supported that TT and AT1 would likely suffer from injury or abuse if placed in respondent's home.

While not explicitly stated, the trial court implied that it was relying on the doctrine of anticipatory neglect—how a parent treats one child is probative of how the parent may treat other children, see *In re LaFrance*, 306 Mich App at 730[3]—to conclude that TT and AT1 would likely suffer from injury or abuse if placed in respondent's home. Under this doctrine, evidence that respondent sexually abused AT2 is *probative* of how respondent will treat TT and AT1 if they are placed in his care.[4] But such evidence is not *determinative* of how respondent will treat TT

---

[1] Respondent argues that AT2's testimony was not sufficient to establish by clear and convincing evidence that respondent sexually assaulted her because the allegations were uncorroborated. Yet in criminal prosecutions, where the standard is proof beyond a reasonable doubt, the testimony of a victim of criminal sexual misconduct need not be corroborated to convict the defendant. See MCL 750.520h. We see no reason why the testimony of a victim of sexual assault needs to be corroborated to prove that the victim was sexually assaulted under the lower (yet still demanding) clear-and-convincing-evidence standard. Thus, that AT2's testimony was uncorroborated does not convince us that the trial court clearly erred when it found that AT2's testimony established by clear and convincing evidence that respondent sexually assaulted her.

[2] The trial court twice stated that it was "reserving the right" to issue a written opinion, but there is no written opinion included in the lower court file.

[3] Respondent contends that *In re LaFrance* "undercut the doctrine of anticipatory neglect." We disagree, and believe that a fair reading of *In re LaFrance* shows that it upheld the general application of the doctrine, but determined that the doctrine had no application to the case before it based on that case's "unusual" facts. *In re LaFrance*, 306 Mich App at 730-731.

[4] Probative evidence is evidence that "makes a fact of consequence more or less probable than it would be without the evidence." *People v Mills*, 450 Mich 61, 67; 537 NW2d 909 (1995).

and AT1. If it were, it would render nugatory the language requiring that there be "a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*i*) and (*ii*). And if this is what the Legislature intended—that a finding of past abuse *always* means that there is clear and convincing evidence to find a reasonable likelihood that the parent will abuse or injure a child in the future if placed in the parent's home—the statute could simply omit the reasonable-likelihood-of-future-abuse language altogether.

Indeed, this used to be the case, albeit for another subsection. Before June 12, 2018, MCL 712A.19b(3)(k) allowed trial courts to terminate a parents rights to a child if the court found that the parent had abused the child or a sibling of the child, and the abuse included one of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life-threatening injury.

(*vi*) Murder or attempted murder.

(*vii*) Voluntary manslaughter.

(*viii*) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

But with the enactment of 2018 PA 58, in addition to finding one of the above instances of abuse, MCL 712A.19b(3)(k) now requires trial courts to find that "there is a reasonable likelihood that the child will be harmed if returned to the care of the parent." MCL 712A.19b(3)(k) as amended by 2018 PA 58.[5] This statutory history reveals that even in the most horrific instances of abuse, the Legislature now intends for trial courts to find by clear and convincing evidence a reasonable likelihood that the child will be subject to *future* harm in the

---

[5] Petitioner argues that termination was proper here based on the version of MCL 712A.19b(3)(k)(*ii*) in effect before 2018 PA 58. Petitioner appears to overlook that the petition in this case was filed on November 5, 2018—nearly five months after the current version of MCL 712A.19b(3)(k)(*ii*) took effect.

parent's care before terminating the parent's parental rights. See *People v Pinkney*, 501 Mich 259, 276 n 41; 912 NW2d 535 (2018) ("Unlike legislative history, statutory history—the narrative of the 'statutes repealed or amended by the statute under consideration'—properly 'form[s] part of the context of the statute . . . .' ") (Citation omitted.) Thus, with the enactment of 2018 PA 58, MCL 712A.19b(3)(k)—like subsections (b)(*i*) and (*ii*)—no longer permits a finding of past abuse, without more, to justify terminating a parent's parental rights.

In sum, there are certainly cases in which a trial court can reasonably find by clear and convincing evidence, based solely on instances of past abuse of a child or the child's sibling, that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home based on the doctrine of anticipatory neglect. This, in turn, would justify termination under MCL 712A.19b(3)(b)(*i*) and (*ii*). But past abuse of a child or the child's sibling—and application of the doctrine of anticipatory neglect—does not *always* establish by clear and convincing evidence that there is a reasonable likelihood that the child will suffer injury or abuse if returned to the parent's care. Thus, past abuse alone does not *always* justify termination under MCL 712A.19b(3)(b)(*i*) and (*ii*). In short, these cases are very fact-intensive, and there is no one-size fits all approach. With this in mind, we turn to the case before us, and examine the facts and evidence that were before the trial court.

The abuse happened 14 years before the termination hearing. AT2 described the abuse in graphic detail: while AT2's brother was sleeping on the top bed of a bunk bed, respondent had AT2—then four years old—get off of the top bed and lay on the bottom bed, where respondent had her take off her pajamas and inserted his penis into her vagina. AT2 pleaded with respondent to stop, which he eventually did, and then he yelled at AT2 to put her pants on and go back to the top bunk. AT2 did not report the sexual abuse until she was six years old—two years after it happened.

Respondent was never charged with a crime related to the abuse because AT2 was too afraid to testify. Respondent was not allowed to see AT2 following the abuse, but his rights were apparently never terminated. Roughly four years after AT2's disclosure, respondent had another child, TT, with a different woman. When TT was about one year old, his mother was granted full custody, and respondent had not seen him since. Approximately four years later, in 2015, respondent had another child, AT1, with yet another woman. From 2015 to 2018, respondent co-parented AT1 with AT1's mother. In August 2018, respondent and AT1's mother parted ways, and respondent became AT1's primary caregiver until November 2018, when the petition in this case was filed and AT1 was removed from respondent's care.

Because the petition requested termination at the initial disposition, respondent was never offered services. Respondent was, however, offered supervised visitations with AT1. He attended all of the offered visitations, and the caseworker testified that they went well with no reported problems. Besides visitations, respondent, on his own initiative, completed parenting classes, and documents showing that he completed the classes were entered into evidence. Respondent also testified that he would be willing to engage in services if they were offered.

At the termination hearing, the caseworker testified that based on AT2's allegation, there were no services that could be offered to respondent that would ensure the children's safety.

And after finding AT2's allegations to be credible—and therefore finding that respondent had sexually abused his then-four-year-old child 14 years ago—the trial court stated:

> None of it, none of that matters, if you sexually assault someone it's inexcusable, it's unforgivable, it's a lifetime offense. No apologies make up for it, [the caseworker] said, I don't know where she is, but -- there she is. You can't service that, you can't service that[.]

We are definitely and firmly convinced that the trial court erred by concluding that petitioner had established by clear and convincing evidence that there was a reasonable likelihood that the children would suffer from injury or abuse in the foreseeable future if placed in respondent's home. The clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 226-227; 538 NW2d 399 (1995). As explained in *In re Martin*:

> Evidence is clear and convincing when it produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. . . . Evidence may be uncontroverted, and yet not be "clear and convincing." . . . Conversely, evidence may be "clear and convincing" despite the fact that it has been contradicted. [*Id*. at 227 (quotation marks and citation omitted; alterations in original).]

It was the DHHS's burden to prove by clear and convincing evidence that there was a reasonable likelihood that TT and AT1 would suffer from injury or abuse in the foreseeable future if placed in respondent's home. It was not respondent's burden to prove a negative; respondent did not have to offer evidence establishing that there was *not* a reasonable likelihood that TT and AT1 would be harmed if placed in his care. As already explained, evidence that respondent sexually abused AT2 14 years ago is probative of whether TT and AT1 will be at risk of harm if placed in respondent's home. But this was the only evidence that the DHHS offered to prove that the children would be at risk of harm if placed in respondent's home.[6] There was no evidence that respondent had committed other abusive acts towards children in the 14 years since he sexually assaulted AT2 (or at any time before the assault[7]), despite having children in his care. And because respondent was never offered services, including a psychological evaluation (which respondent's counsel repeatedly requested so that a psychologist could

---

[6] In support of its decision, the trial court, in addition to AT2's testimony, also relied on respondent's use of the word "snuggle" to describe his interactions with AT1. The trial court suggested that this word was a link to his daughter's testimony and provided a basis to believe that respondent was in a position to abuse AT1. We cannot agree that this word, commonly used in all sorts of innocuous contexts, in any way demonstrates a likelihood of future abuse.

[7] There was an allegation in the petition that respondent sexually assaulted his sister, but no evidence proving this allegation was admitted.

determine whether respondent posed a threat to the children's safety), there was no evidence respondent otherwise posed a threat to children placed in his care.[8]

Considering the evidence, we conclude that the trial court clearly erred by finding that the DHHS established by clear and convincing evidence that there was a reasonable likelihood that TT and AT1 would suffer from injury or abuse in the foreseeable future if placed in respondent's home. The evidence of respondent's sexual abuse of AT2 was *probative* of whether respondent would injure or abuse TT or AT1 if they were placed in his home, but the trial court treated this evidence as determinative. The trial court stated that the sexual assault was "inexcusable, it's unforgivable, it's a lifetime offense," and "[n]o apologies make up for it[.]" While we agree with the sentiment that sexual assault—especially of one's own child—is inexcusable and unforgiveable, the evidence of respondent's sexual abuse of AT2 was not *determinative* of whether TT and AT1 would be at risk of injury or abuse in respondent's home. Had the Legislature intended for persons such as respondent to always have their rights terminated to any children they have now or in the future, the Legislature would have written the law that way. But instead, the Legislature requires the DHHS to prove both the past abuse and that there is a reasonable likelihood of future abuse. Given the evidence presented in this case, we are definitely and firmly convinced that the trial court made a mistake by finding that the DHHS established this latter requirement by clear and convincing evidence. Because reasonable likelihood of injury or abuse in the foreseeable future if placed in respondent's home was a requirement for both MCL 712A.19b(3)(b)(*i*) and (*ii*), the trial court's findings for both statutory grounds was clearly erroneous.[9]

## III. BEST INTERESTS

Respondent also contends that the trial court erred by concluding that termination was in TT and AT1's best interests. We agree.

## A. STANDARD OF REVIEW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental

---

[8] We note this only because, had the DHHS offered services to respondent, respondent's refusal to participate in services, or facts that came to light based on respondent's participation in services, could have been probative of whether there is a reasonable likelihood that the children would be harmed in the foreseeable future if placed in respondent's home. We emphasize that the DHHS was not required to provide services to respondent, and do not base our reasoning in any way on the DHHS's proper refusal to provide services.

[9] We also note that "subparagraph (*ii*) is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *In re LaFrance Minors*, 306 Mich App at 725. It is unclear to us from the trial court's decision why this statutory ground would be applicable to respondent given the facts.

rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

## B. ANALYSIS

The focus at the best-interest stage is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 364, and may consider such factors as

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. [*In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted).]

Other factors include "a parent's history of domestic violence, . . . the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court's best-interest analysis here was limited. It appeared to find that termination was in the children's best interests because their safety could not be assured in respondent's care. It did not consider and weigh any other factor, such as AT1's bond with respondent, respondent's parenting ability, respondent's visitation history with AT1, or the children's need for permanency, stability, and finality. That is not to say that whether "the children's safety and well-being [can be] reasonably assured" in the respondent's care cannot outweigh the other factors, see, e.g., *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011); only that a trial court's best-interest analysis is supposed to weigh all the evidence available to it, *In re Trejo*, 462 Mich at 364, and the trial court did not appear to do that here. But the problems with the trial court's best-interest analysis go beyond this.

In *In re Olive/Metts*, 297 Mich App at 43, this Court explained that "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," and that "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." Though TT was placed with his mother and not a relative, see *In re Schadler*, 315 Mich App 406, 409; 890 NW2d 676 (2016) (explaining that a biological parent is not considered a relative under MCL 712A.13a(1)(j)), AT1 *was* placed with a relative—respondent's sister. The trial court wholly failed to consider this factor when it ruled that termination was in AT1's best interests, which was error.

In *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014), this Court held that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." AT1 had been living with respondent all of his life, which included respondent being AT1's primary caregiver for three months before AT1's removal. In contrast, respondent had no part of TT's life; respondent and had not even seen TT for years before the petition was filed. The trial court never addressed these significant differences and how they might affect its best-interest analysis, if at all.

-8-

Reversed and remanded for additional proceedings.  We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien