*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES DONALD HOLKEBOER,

      Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 365964
Kent Circuit Court
LC No. 22-11187-FH

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

James Donald Holkeboer appeals by leave granted[1] the trial court's order denying his motion to quash his bindover. Holkeboer stands charged with election fraud for falsifying election returns or records, MCL 168.932(c), and using a computer to commit a crime, MCL 752.796. Principally at issue here is the first of his two charges and, specifically, the meaning of the words "remove" and "secrete" in MCL 168.932(c). In denying Holkeboer's motion to quash his bindover, the trial court found that inserting one's own flash drive into an election laptop and downloading a copy of the voter roll amounts to removing and/or secreting election records. We disagree. Therefore, we vacate and remand for the trial court to quash Holkeboer's bindover.

## I. BACKGROUND

Holkeboer was hired to work as an election inspector in the August 2022 primary election. He was assigned a precinct and, within that precinct, assigned a station. Holkeboer's station job was to verify the identity of all individuals who came to vote and to assign each individual a voter number and a ballot number. For this work, Holkeboer's station had a laptop computer. The laptop computer, which was not connected to the Internet, contained the electronic poll book. At the close of polls, election workers run several reports on their provided laptop computer, including a report that lists the name and ballot number of each voter, and save the reports to a secure USB

---

[1] *People v Holkeboer*, unpublished order of the Court of Appeals, entered October 5, 2023 (Docket No. 365964).

flash drive. Michael Grew, the clerk of Gaines Charter Township, received the secure flash drive from Holkeboer's precinct.

Approximately two weeks after the election, an election worker from Holkeboer's precinct reported to the Gaines Charter Township clerk's office that after the poll closed, another election worker placed a personal USB flash drive into the provided election laptop computer and downloaded information from the computer. Clerk Grew reported the allegation to the Kent County Clerk and to the Kent County Sheriff. Grew gave the laptop computer and the secure USB flash drive to Detective Christopher Goehring of the Kent County Sheriff's Department.

Detective Goehring met with Holkeboer and asked Holkeboer about the primary election. Holkeboer said that, toward the end of the day, he became "the electronic poll book worker." His duties included running reports on the laptop computer after the poll closed and saving those reports to a secure flash drive. Holkeboer admitted that he placed his own personal flash drive into the laptop computer and exported a report detailing the election list of voters from the electronic poll book onto the flash drive. He explained that, either the night before the primary election or the morning of the election, he came up with the idea of trying to obtain records from the laptop computer and to compare those records with "a FOIA-able copy" that he would obtain from the clerk's office after the election. Holkeboer had already filed his FOIA request with Grew for a list of all individuals who voted in the primary, and Grew honored the request. Detective Goehring had no information that any of the original files from the laptop computer were damaged or destroyed.[2]

The prosecutor charged Holkeboer with election fraud and using a computer to commit the crime of election fraud. The prosecutor argued at Holkeboer's preliminary examination that in copying the voter roll to his personal USB flash drive, Holkeboer "fraudulently removed" an election list of voters. The prosecutor emphasized that Holkeboer accessed information from the laptop computer that was generally not accessible. It was irrelevant, the prosecutor argued, that Holkeboer's conduct did not affect the election results.

Holkeboer countered that no crime was committed under MCL 168.932(c) because no election record was destroyed, mutilated, defaced, or falsified; no record was removed or secreted; and there were no false entries. Under the statute, Holkeboer argued, it was not a crime to "copy." He also argued that if this crime could not be proven under MCL 168.932(c), he could not have used a computer to commit a crime under MCL 752.796.

The district court bound Holkeboer over on the two charges. The district court judge reasoned that while she "never sat down and read MCL 168.972 in detail," she was nevertheless confident that Holkeboer's actions, namely taking information that he had "no right to take," was "exactly" what MCL 168.932(c) is "talking about."

---

[2] Detective Goehring sent the laptop computer and the secure flash drive to the Michigan State Police. At the time of Holkeboer's preliminary examination, he was not aware of the results of any audits done on them.

Holkeboer moved to quash this bindover. At the motion hearing, Holkeboer argued that the issue was whether "copying," which is what he did, was "tantamount to removing or secreting." According to Holkeboer, it was not; instead, the activity proscribed in MCL 168.932(c) was conduct—such as destroying, mutilating, defacing, and removing—that affects the integrity of the election record. There was no evidence, Holkeboer argued, to suggest that his act of copying the list of voters had any impact or effect on "the digital file itself." The trial court denied Holkeboer's motion to quash.

This Court granted Holkeboer's application for leave to appeal. Because this case presents an issue of first impression as to the meaning of the language in MCL 168.932, it is to the statutory language we turn next.

## II. STATUTORY LANGUAGE AND RULES OF INTERPRETATION

Holkeboer stands charged with violating MCL 168.932(c) and using a computer to commit that offense. We review the denial of his motion to quash for an abuse of discretion, but review interpretation of the underlying statute de novo. See *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

The relevant portion of MCL 168.932 provides:

A person who violates 1 or more of the following subdivisions is guilty of a felony:

* * *

(c) An inspector of election, clerk, or other officer or person having custody of any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or of any paper, document, or vote of any description, which pursuant to this act is directed to be made, filed, or preserved, shall not willfully destroy, mutilate, deface, falsify, or *fraudulently remove or secrete* any or all of those items, in whole or in part, or fraudulently make any entry, erasure, or alteration on any or all of those items, or permit any other person to do so. [Emphasis added.]

A review of this statute begins with its language. "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Reese v James*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362140); slip op at 4 (citation omitted). Further, "[i]n reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Id*. "However, if a statute is susceptible to more than one interpretation, we must engage in judicial construction and interpret the statute." *People v Tolonen*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 366417); slip op at 2-3. A principle of statutory construction is that words grouped together in a list should be given related meaning. *People v Hill*, 486 Mich 658, 668; 786 NW2d 601 (2010).

Premised on the aforementioned charge of election fraud, Holkeboer was also charged with using a computer to commit a crime. See MCL 752.796 ("(1) A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime."). Accordingly, if this Court

determines that Holkeboer's conduct was not contemplated under MCL 168.932, then his conduct necessarily cannot meet the elements of using a computer to commit a crime.

## III. APPLICATION

There is no dispute regarding what Holkeboer did here—he exported a report detailing the election list of voters from the electronic poll book onto his personal flash drive. The question before this Court is whether that conduct is a crime under MCL 168.932(c).

The elements of this offense, as relevant here, include: (1) the defendant was an election inspector who; (2) had custody of any record or election list of voters, which pursuant to Michigan Election Law is directed to be made, filed, or preserved; and (3) the defendant fraudulently removed or secreted, in whole or in part, the item(s) at issue. See *People v Hawkins*, 340 Mich App 155, 175; 985 NW2d 853 (2022). "The intent to defraud is the specific intent to cheat or deceive." *Id*. at 175-176 (quotation marks and citation omitted).

There is no question that the first two elements of MCL 168.932(c) were met. Holkeboer was an inspector of elections who was tasked with custody of the election list of voters housed on the Station 2 computer. The pertinent question, then, is whether Holkeboer's conduct, using a personal flash drive to make a copy of the election list of voters, falls within the meaning of fraudulently removing or secreting this information under the statute. We find that his conduct, while improper, did not violate MCL 168.932(c).

### A. MEANING OF "REMOVE" OR "SECRETE" UNDER MCL 168.932(c)

The terms "remove" and "secrete" are two of various acts prohibited in MCL 168.932(c). As noted by the trial court, the terms "fraudulently," "remove," and "secrete" are not defined in the statutory scheme. See MCL 168.2 through MCL 168.4.

The *Merriam-Webster Collegiate Dictionary* provides several definitions for "remove" and "secrete." As a verb, "remove" is defined as "to change the location, position, station, or residence of" or "to get rid of." *Merriam-Webster Collegiate Dictionary* (11th ed). As a verb, "secrete" is defined as "to deposit or conceal in a hiding place" or "to appropriate secretly." *Id*. The term "appropriate" used in the definition of "secrete" means "to take exclusive possession of," "to set apart for or assign to a particular purpose or use," or "to take or make use of without authority or right." *Id*. As noted earlier, "fraudulently" is the specific intent to cheat or deceive. *Hawkins*, 340 Mich App at 175-176.

Given these definitions, the trial court reasoned that the statute "only requires proof that Mr. Holkeboer[,] with the intent to defraud, changed the location, position, or station of the election list of voters; or that he deposited or concealed the election list of voters in a hiding place or appropriated it secretly." The trial court found that Holkeboer changed the location of the voter roll by duplicating the election list of voters onto his personal flash drive. The trial court also found that Holkeboer's conduct amounted to "secreting" because he did not disclose his copying plans to anyone else.

Holkeboer appealed the trial court's denial of his motion to quash. In his application for leave to appeal, Holkeboer argued that the words "fraudulently remove" and "secrete" in MCL 168.932(c) do not encompass what he did, which was simply copying or duplicating. He elaborated: to "remove" is to change the location or position of an object or to get rid of the object; to "secrete" is to deposit or conceal the object in a hiding place; to "copy" is to make a duplicate of something. This, Holkeboer argued, is not the same as to "remove" or to "secrete." Holkeboer also argued that the words "remove" and "secrete" cannot be read in isolation, but must instead be read in conjunction with the other words in the series of proscribed conduct. According to Holkeboer, those other words—destroy, mutilate, deface, and falsify—compel the conclusion that MCL 168.932(c) only prohibits conduct that alters or changes the essential character of the election record or renders the record unavailable to the rightful owner.

Holkeboer argued further that copying an election record does not make the original record unavailable for use, emphasizing that the record at issue—a digital file of a list of voters—was not removed or hidden, nor was there any allegation that he destroyed, mutilated, defaced, or falsified it. According to Holkeboer, the file remained in place, unaltered for use by Gaines Charter Township. Further, although the word "secrete" can mean to appropriate secretly, and the word "appropriate" is defined as to take or make use of without authority, this alternative definition of "secrete" is not of the same character or nature of the other proscribed conduct.

The prosecutor responded that the trial court did not err in its interpretation of MCL 168.932(c). It argued that to "secrete" means to deposit or conceal in a hiding place, which would include a location that is not publicly accessible and where information can be kept from others. The prosecutor then stated that Holkeboer deposited the voter information from the laptop computer onto his personal flash drive, a place that was not publicly accessible and where Holkeboer could keep the voter information for purposes of finding discrepancies between it and the report he later obtained through a FOIA request. The prosecutor added that (1) to "remove" is to change the location, (2) Holkeboer here took digital information, and (3) digital information may be protected through password-protected devises or systems. According to the prosecutor, the concept of removal, as it pertains to digital information, would include the transfer of information from one source to another because "[d]oing so changes the location of the digital information, allowing someone to find it on a different system, device, or network than the original source." Thus, the prosecutor argued, to change the location of digital information may include acts that transfer the information to a second, third, or fourth device.

Contrary to the prosecution, we read the dictionary definition of "remove" to require taking away the custodian's access to the information altogether. Applying this to the statute at issue, the language reads: An inspector of election . . . having custody of . . . an election list of voters, . . . which pursuant to this act is directed to be made, filed, or preserved, shall not change the location, position, station, or residence of—or get rid of—the item. Holkeboer did not change the location, position, station, or residence of the election list of voters, nor did he get rid of it. When he made the copy, the original election list of voters' information was still in the location, position, station, or residence of the computer and the secure election flash drive. Holkeboer never made election information unavailable to the custodian, and thus, he never removed it.

"Secrete" is a closer call. Holkeboer's conduct could meet the dictionary definition "to appropriate secretly" under "secrete." In fact, Holkeboer acknowledges that the definition, "to

-5-

appropriate secretly," with the further definition of "appropriate" meaning "to take or make use of without authority or right," would fit his conduct.[3] Unlike the definition of "remove," this definition clearly permits an understanding of "secrete" in which the individual does not make the original information unavailable to the custodian. Instead, the act of "mak[ing] use without authority or right" permits a reading of the statute in which someone makes use of information without authority, like by making an unauthorized personal copy.

However, to read "secrete" in this way ignores the context of the surrounding prohibited conduct. See *Feyz v Mercy Memorial Hosp*, 475 Mich 663, 684 n 62; 719 NW2d 1 (2006) ("[B]ecause a word can have many different meanings depending on the context in which it is used, and because dictionaries frequently contain multiple definitions of a given word, in light of this fact, it is important to determine the most pertinent definition of a word in light of its context."); *Wardell v Hincka*, 297 Mich App 127, 132; 822 NW2d 278 (2012) ("When consulting a dictionary, this Court should be cognizant of the context in which the term is used."). As with "remove," the surrounding terms each contemplate that the document was altered or made unavailable to the owner.

In context of the subsection, an inspector of elections shall not "destroy, mutilate, deface, falsify, or fraudulently remove or secrete any or all of those items, in whole or in part, or fraudulently make any entry, erasure, or alteration on any or all of those items." MCL 168.392(c). Outside of the terms "remove" and "secrete," the remaining terms involve the destruction or alteration of the information. In particular, the term "destroy" means that the information is made entirely unavailable. See *Merriam-Webster Collegiate Dictionary* (defining "destroy" as "to ruin the structure, organic existence, or condition of" and "to ruin as if by tearing to shreds"). The other terms, "mutilate"; "deface"; "falsify"; and "make any entry, erasure, or alteration," each evoke the idea of changing the information in part. See, e.g., *id*. (defining "mutilate" as "to cut up or alter radically so as to make imperfect"; defining "deface" as "to mar the appearance of: injure by effacing significant details"; and defining "falsify" as "to prove or declare false," "to make false," and "to make false by mutilation or addition").

Each of these terms is limited to two features. The term "destroy" includes the necessary feature that the original information is made unavailable by destruction. The remaining terms in the list include the necessary feature that the information is made unavailable to the extent that alterations to the information affected the integrity of it.

Alone, the term "secrete" can broadly mean "to appropriate secretly," with the further definition of "appropriate" meaning "to take or make use of without authority or right." However, when read in the context of the statute at issue, including the other terms "destroy," "mutilate," "deface," "falsify" and "fraudulently make any entry, erasure, or alteration," the prohibited conduct requires that the information is rendered unavailable by means of permanent removal or

---

[3] Given this concession, we do not engage in any discussion around whether there was sufficient evidence to support that Holkeboer's actions were done secretly. We do observe that seemingly, Holkeboer's election co-worker had a clear view of Holkeboer's conduct, thus, it is not clear how Holkeboer acted "secretly" at all.

alteration to the integrity of the information. "Remove" and "secrete" harmonize with the statute's other terms when they are limited in this manner.

Reading "secrete" in the narrower definition, "to deposit or conceal in a hiding place" or "to [secretly] take exclusive possession of," thus comports most closely with the statute's overall context. See *Feyz*, 475 Mich at 684 n 62; *Wardell*, 297 Mich App at 132. And this interpretation still gives effect to every word in the statute. See *James*, ___ Mich App at ___; slip op at 4. Specifically, under the canon against surplusage, this Court "must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *People v Miller*, 498 Mich 13, 25; 869 NW2d 204 (2015) (quotation marks and citation omitted). When read with this limitation, these terms still retain a unique meaning because both terms contemplate that information can be made permanently unavailable, similar to the term "destroy," but without the information actually being destroyed.

Beyond the context of its surrounding verbs, the terms "remove" and secrete" must be read in relation to the rest of the subsection. As relevant to this case, each of the prohibited actions relates to the inspector of election either having custody of or changing "any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or of any paper, document, or vote of any description, which pursuant to this act is directed to be made, filed, or preserved . . . ." MCL 168.932(c). Each of the listed documents is the original, with no reference anywhere to copies or copying. And a copy of the election list of voters is not a document "to be made, filed or preserved." *Id.* If the Legislature wanted to prohibit the removal or secreting of *copies* of these documents, it could have included copies in this list of included documents. Or the Legislature could have explicitly listed the act of copying information among the statute's prohibited conduct. The Legislature knows how to prohibit such conduct. For example, under Michigan Election Law, the Legislature prohibits release of a copy of registration records in relation to FOIA requests. See MCL 168.509g ("The secretary of state, a designated voter registration agency, or a county, city, township, or village clerk shall not release a copy of that portion of a registration record . . . .").

Further, viewing MCL 168.932(c) in context of the full statute and the statutory scheme supports an overall legislative intent to protect election integrity. For example, within the same statute, Subsection (a) "criminalize[s] the interference with the exercise of the right to vote as well as a breach of the integrity of the process through interference." *People v Burkman*, 341 Mich App 734, 752; 992 NW2d 341 (2022). Likewise, Subsection (b) is aimed at maintaining election integrity through the prohibition against destruction of, tampering with, or removal of ballot boxes and voting machines, as well as removal or addition of ballots to a voting machine. MCL 168.932(b). The only subsection that addresses the privacy of information is MCL 168.932(d), which proscribes disclosure of the name of a candidate voted for by an elector when a person sees the contents of the elector's ballot. Even under Subsection (d), the Legislature did not proscribe release of other voter information, such as social security numbers. And this subsection is still connected to preserving overall election integrity by adding, "nor [may a person] in any manner obstruct or attempt to obstruct any elector in the exercise of his or her duties as an elector under this act."

In sum, the definitions asserted by both parties were found in the dictionary. However, reading the terms "remove" and "secrete" in context of the statutory text shows that the Legislature

intended to criminalize conduct that affected the integrity of the election information, meaning the conduct made election information unavailable or altered the nature of that information. By contrast, this statute does not criminalize mere copying of information when that act does not permanently remove or alter that information.

### B. MCL168.932 CONCERNS THE INTEGRITY OF ELECTION RESULTS

While secondary in import to the plain language, "[l]egislative history is valuable when it evidences an intent to repudiate a judicial construction or considers alternatives in statutory language." *Seymour*, 258 Mich App at 254. In contrast, statutory history "properly form[s] part of the context of the statute." *People v Pinkney*, 501 Mich 259, 276 n 41; 912 NW2d 535 (2018) (quotation marks and citation omitted; alteration in original).

Pinkney was convicted under MCL 168.937 for altering the dates associated with signatures on a recall petition. *Id*. at 263. The Court considered whether a person could be convicted of election-law forgery under MCL 168.937,[4] and ultimately concluded that because the statute was a penalty provision as opposed to a statute creating a substantive offense, Pinkney's conviction under the statute must be reversed. *Id*.

In the Court's analysis of MCL 168.937, it looked to the statutory history of Michigan Election Law. *Id*. at 276. Specifically, its analysis of the statutory history of MCL 168.937 explained that, for over 80 years, only one statute criminalized election-related forgery limited to falsification of a "register of electors." *Id*. at 276-277, citing 1859 PA 177, § 20. The prohibited conduct initially included to " 'willfully cut, burn, mutilate or destroy,' " and " 'unlawfully take and carry away the same, or unlawfully conceal or refuse or neglect to surrender . . . .' " *Pinkney*, 501 Mich at 277 n 42, quoting 1859 PA 177, § 20. Of note, at the time, the statute indeed prohibited such conduct toward " 'any register of electors, or copy thereof . . . .' " *Pinkney*, 501 Mich at 277 n 42, quoting 1859 PA 177, § 20. The Court explained that "the statute was designed to protect a document that was in the custody of election officials." *Pinkney*, 501 Mich at 277.

In 1925, the Legislature first enacted the following statute:

> Every inspector of election, clerk or other officer or person having the custody of any record, election list of voters, affidavit, return or statement of voters, certificates, poll book, or of any paper, document or vote of any description, in this act directed to be made, filed or preserved, who is guilty of *stealing, wilfully destroying, mutilating, defacing, falsifying or fraudulently removing or secreting* the whole or any part thereof, or who shall *fraudulently make any entry, erasure,*

---

[4] MCL 168.937 states in full:

> Any person found guilty of forgery under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court.

*or alteration therein,* or who permits any other person so to do, shall, on conviction, be deemed guilty of a felony. [1925 PA 351, part V, ch I, § 14 (emphasis added).]

Our Supreme Court has explained that this statute "was designed to preserve the purity of elections . . . ." *People v O'Hara*, 278 Mich 281, 297; 270 NW 298 (1936).

In 1954, the Legislature rewrote the election law and expanded the scope of election-related forgery with the enactment of MCL 168.932(c). See *Pinkney*, 501 Mich at 279. The Court explained that MCL 168.932(c) "essentially combined the two offenses from 1948 CL 195.8 into one," but the subsection "continued to focus (now explicitly) on the actions of election officials and those who have custody of election records." *Id*. As enacted, MCL 168.932(c) provided:

No inspector of election, clerk or other officer or person having custody of any record, election list of voters, affidavit, return or statement of votes, certificates, poll book, or of any paper, document or vote of any description, in this act directed to be made, filed or preserved, *shall wilfully destroy, mutilate, deface, falsify or fraudulently remove or secrete* the whole or part thereof, or fraudulently make any entry, erasure or alteration therein, or permit any other person to do so. [1954 PA 116 (emphasis added).]

Comparing the statute from 1925 and 1954, the 1925 statute plainly influenced the language for the original language of MCL 168.932(c). This is evident in the similar list of prohibited conduct, of which the only exclusion in the 1954 enactment is "stealing."

The *Pinkney* Court explained that, since 1954, MCL 168.932(c) has been amended in style rather than substance, noting the change in some of the terminology from previous versions. *Pinkney*, 501 Mich at 279 n 48. The Court concluded that "[Subsection] 932 is a direct descendant of the original, independent substantive forgery offense." *Id*. In our view, this statutory history suggests that MCL 168.932(c) in its current state retains much of the same purpose found in the 1859 and 1925 iterations, *each of which was concerned with election integrity*. See *Pinkney*, 501 Mich at 277 (emphasis added); *O'Hara*, 278 Mich at 297.

A fact is worth reiterating—the Legislature has not amended this statute substantively since its enactment in 1954. The idea that the Legislature contemplated the scenario here—the digital copying of election information—under MCL 168.932(c) is belied by the technological advances in voting technology and computers since the last time this statute was substantively updated. Even at the time of its most recent ministerial amendment in 1995, see 1995 PA 261, the Legislature could have added language to explicitly prohibit copying of election information if it so intended, given that it was (and remains) a time of increasing use of computers and digital technology. The Legislature has consistently demonstrated its ability to amend statutes to reflect the improper use of advancing technological mediums.[5] We do not opine whether Holkeboer's actions could be criminal under a different, already-existing statute.

---

[5] See, for example, MCL 380.1310b, Michigan's anti-bullying statute first passed in 1976 and updated in 2014 to include "cyberbullying."

## C.  HOLKEBOER'S CONDUCT

At the preliminary examination, the prosecution had to demonstrate that Holkeboer fraudulently removed or secreted the election list of voters such that the information was no longer available or altered.  Here, no evidence was presented that election information was altered or made unavailable to its custodian.  Instead, the evidence presented at the preliminary examination established that Holkeboer made a copy of the original election list of voters.  Because no evidence established that Holkeboer fraudulently removed or secreted the election list of voters under MCL 168.932(c), no evidence established that defendant used a computer to commit a crime under MCL 752.796 and MCL 752.797(3)(c).

## IV.  CONCLUSION

The trial court erred when it denied Holkeboer's motion to quash the bindover.  The act of copying a list of voters without affecting the integrity of the document or election is not, at least at present, prohibited by MCL 168.932(c).  We vacate the trial court's order denying Holkeboer's motion to quash and remand for an entry of an order dismissing this case.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young

-10-